1
2
3
4
5               **UNITED STATES DISTRICT COURT**
6                        **DISTRICT OF NEVADA**
7
8    JS PRODUCTS, INC.,                 )
                                         )
9                    Plaintiff,          )        Case No.  2:11-cv-01856-RCJ-GWF
                                         )
10   vs.                                 )        **ORDER**
                                         )
11   KABO TOOL COMPANY,                  )        **Motion to Compel (#120)**
                                         )
12                    Defendant.         )
     _____)
13

14          This matter comes before the Court on Defendant Kabo Tool's ("Kabo") Motion to Compel

15   (#120), filed on February 26, 2013.  Plaintiff JS Products ("JSP") filed an Opposition (#134) on

16   March 15, 2013.  Kabo filed a Reply (#137) on March 25, 2013.  The Court conducted a hearing on

17   the Motion (#120) on April 2, 2013.  *See Minutes of Proceedings, Doc. #154.*

18                                **BACKGROUND**

19          This Court has previously set forth the bases of JSP's claims in this case, *see October 23,*

20   *2012 Order, Doc. #79* at 2:2-3:12, which are hereby incorporated.  Kabo now seeks under Federal

21   Rules of Civil Procedure 26, 37, and 45 to compel further responses to its Requests for Production

22   numbers 2, 4, 5, 8, 10, 13, 14, 16, 18, 20, 23, 28, 29, 30, 34, 43, 49, and 50, and to conduct an

23   additional Rule 30(b)(6) deposition of JSP.

24          Kabo represents it served its First Set of Requests for Production ("RFPs") on February 7,

25   2012, and received JSP's Responses on March 27, 2012.  In its October 23, 2012 Order (Doc. #79),

26   the Court granted in part Kabo's Motion to Compel (#42), and JSP provided further productions.

27   After the supplemental productions, Kabo represents JSP communicated it had no additional

28   documents responsive to Kabo's RFPs.

1    Kabo subsequently conducted individual and 30(b)(6) depositions during the week of

2    December 17, 2012.  Kabo represents that during the deposition of JSP witness Gregory Ross

3    ("Ross"), Kabo discovered that Ross limited his email search term to "Kabo" when locating

4    potentially responsive documents.  Kabo further represents that JSP's 30(b)(6) witness James

5    Moore ("Moore") stated that Kabo limited its search to the emails of Moore, Ross, and JSP

6    employee Tim Michel, parameters which Kabo argues were inappropriately narrow.

7    Finally, Kabo represents that in his 30(b)(6) deposition, Moore referenced or identified

8    numerous withheld documents that are responsive to Kabo's RFPs.  Following Kabo's requests for

9    additional production, JSP provided a supplement on February 11, 2013.  Kabo now argues the

10   following categories of documents are responsive to its RFPs and have still not been produced: (1)

11   detailed manufacturing documentation and original factory drawings; (2) JSP's standard operating

12   procedures ("SOPs") relevant to Kabo's asserted claims; (3) JSP's project check lists relevant to

13   the accused products; (4) financial records and statements; (5) emails with Jerry Hsu regarding the

14   presentation of Crossform wrenches to JSP; (6) email responses after Kabo's September 9, 2011

15   letter to Lowe's regarding infringement; (7) recap of notes following an internal JSP meeting

16   regarding Kabo; (8) communications with PTI; and (9) JSP's supplier exit plan.

17                                              **DISCUSSION**

18   The scope of discovery in patent cases "should be liberally construed" under Federal Rule

19   of Civil Procedure 26(b)(1).  *See Bd. of Trs. of Leland Stanford Jr. Univ. v. Roche Molecular Sys..*

20   *Inc.*, 237 F.R.D. 618, 621 (N.D.Cal.2006) (compelling production of documents under Rule 26 in

21   patent infringement action).  Rule 26 encompasses "any matter that bears on, or that reasonably

22   could lead to other matters that could bear on, any issue that is or may be in the case.*"*

23   *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Discovery is not limited to the

24   issues raised only in the pleadings, but rather it is designed to define and clarify the issues.  *See id.*

25   at 351.  If a party agrees to produce the requested documents, it must produce all material that is

26   within its "possession, custody, or control."  Fed. R. Civ. P. 34(a)(1)(A).  "Control" need not be

27   actual control; courts construe it broadly as "the legal right to obtain documents upon demand."

28   *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir.1989);

*see also  Scott v. Arex, Inc.,* 124 F.R.D. 39, 41 (D.Conn.1989) (party controls document if it has right, authority, or ability to obtain documents on demand).

### A.    Categories of Documents Sought

#### 1.    *Original Factory Drawings*

Kabo seeks production of detailed manufacturing documentation and original factory drawings regarding the accused product.  The Court finds such documents are responsive to Kabo's RFPs nos. 4 and 13.  RFP no. 4 requests "[a]ll documents that support, dispute, or otherwise relate to Kabo's claim of JS Products' infringement of the '057 Patent."  RFP no. 13 seeks "[a]ll documents and things referring or relating to the conception of Kobalt Crossform Wrenches, including, but not limited to, models, prototypes, specifications, schematics, simulations, notes, laboratory notebooks, manuals, memoranda, correspondence or e-mail." JSP argues that the drawings and documents sought are in the possession of its third-party supplier Porauto and third-party manufacturer Jin Wang.   In his 30(b)(6) deposition, however, Moore stated that he could "get access to a detailed manufacturing print for this particular product if [he] wanted to" by "contact[ing] his supplier and [...] request[ing] it."  *See Doc. #119, Exh. L* at 166:24-167:8.  When asked if his supplier has had any issue providing a print in the past, Moore responded, "Generally not." *Id.*  The Court therefore also finds that, based on Moore's testimony, the requested documents, in addition to being responsive to RFPs nos. 4 and 13, are within JSP's control and shall be produced.

#### 2.    *Standard Operating Procedures*

Kabo also seeks production of JSP's documents related to various SOPs including document retention, quality control and assurances, and manufacturing tolerances.  The Court finds SOPs regarding manufacturing tolerances and document retention are responsive to Kabo's RFPs nos. 34 and 50.  RFP no. 34 requests "[a]ll documents that support, dispute, or otherwise relate to JS Products' claim of non-infringement, invalidity, and/or unenforceablility of the '057 Patent." Kabo represents that JSP has argued manufacturing tolerances as a defense against Kabo's infringement allegations.  Accordingly, to the extent that an SOP on manufacturing tolerances exists, it shall be produced in response to Kabo's RFP no. 34.  RFP no. 50 requests "[a]ll

3

documents referring or relating to any policy, instruction, or set of instructions [...] relating to the destruction or retention of documents or records."  In Moore's 30(b)(6) deposition, he stated that JSP has a document retention policy, and when asked whether it is written down responded that he "believe[s] that it is in an SOP."  *See Doc. #119, Exh. L* at 45: 12-20.  JSP, despite Moore's deposition testimony, now asserts there is no written SOP regarding document retention.  To the extent JSP maintains this position, it shall provide Kabo with an affidavit by the person most knowledgeable or other representative to that effect setting forth the inquiry made to discover any SOP on document retention.

### 3. *Ghant List*

Moore offered deposition testimony regarding JSP's general use of a "Ghant List," which is a project chart or checklist JSP creates when preparing to demonstrate new items to a customer. *See Doc. #119, Exh. L* at 64:17-65:6.  Kabo seeks production of the Ghant List for the accused product at issue in this case.  JSP agrees that any extant Ghant List would be responsive to Kabo's RFPs, but states that no such list exists for the accused product.  As with the subject SOPs, to the extent JSP maintains this position, it shall provide an affidavit by the person most knowledgeable or other representative to that effect setting forth the inquiry made to discover any responsive Ghant List.

### 4. *Financial Records*

Kabo's RFP no. 29 requests "[a]ll financial reports of JS Products from 2006 to the present."  JSP maintains its original objections to the scope of this RFP, and represents that JSP has produced its revenue from sales of the accused product to Lowe's as well as the amount JSP remunerated JSP's third-party supplier Proauto for the accused product.  Kabo now seeks all of JSP's financial information to facilitate, among other things, a comparative cost analysis for the production of the accused wrench and conventional wrenches for the purposes of damages calculation.  For the reasons stated on the record at the April 2 hearing, the Court finds this request to be overly broad.  To the extent JSP has in its possession, custody, or control any outstanding financial documents relating to the production or sale of the accused product, however, they shall be produced.

1

### 5.    *Emails Between JSP and Jerry Hsu*

2      Kabo further represents that during his deposition, Moore confirmed that Jerry Hsu, who

3  facilitated the manufacture and supply of the accused product on behalf of JSP, presented the

4  product to JSP.  In so doing, Kabo argues Moore's deposition testimony suggests Moore and Jerry

5  Hsu exchanged emails regarding the accused product.  When asked whether the accused product

6  was "presented to [him] by Jerry Hsu of Proauto," Moore responded affirmatively.  *See Doc. #119,*

7  *Exh. L* at 85:3-7.  Moore testified that such initial presentations routinely occur "via email [...] or

8  phone call[.]" *Id.* at 85:17-18.  Emails regarding Jerry Hsu's presentation of the accused product to

9  JSP may be responsive to Kabo's RFP no. 5, which requests "[a]ll documents referring or relating

10 to any communication between JS Products and Kabo regarding [JSP's] products and/or the alleged

11 infringement of '057 Patent by JS Products."  JSP argues that only emails between JSP and Kabo

12 are responsive to this Request.  The Court finds that any emails between JSP and Jerry Hsu are

13 responsive to RFP no. 5, however, to the limited extent that they relate or refer to communications

14 between JSP and Kabo.

15     Kabo also argues emails not falling within RFP no. 5's reach are responsive to RFP no. 20,

16 which requests all documents "used in the introduction and/or promotion of each wrench product

17 [JSP] sold, offered for sale, displayed, advertised, and/or marketed in the United States since June

18 27, 2006."  JSP asserts that the emails sought were not "used" in the sale and promotion of the

19 accused product, and are therefore not responsive to RFP no. 20.  Kabo responds that to the extent

20 the emails between JSP and Jerry Hsu contributed in any way to the introduction of the accused

21 wrench, they are properly responsive.  Kabo's construction of its RFP no. 20 is overly broad, and

22 only the emails between JSP and Jerry Hsu that relate or refer to communication between JSP and

23 Kabo shall be ordered produced.

24

### 6.    *JSP's Response to Kabo's Letter to Lowe's*

25     Kabo alleges JSP has failed to provide its communications related to a September 9, 2011

26 letter from Kabo to Lowe's regarding sale of the accused product.  When asked whether he

27 responded to forwarded internal Lowe's emails circulated after receipt of the September 9 letter,

28 Moore testified at his deposition that "[he] imagine[d] he would have" but does not recall.  *See*

1   *Doc. #119, Exh. L* at 254:9-24.  Moore also indicated he would be able to research whether he

2   responded to the email.  *Id.* at 255:11-14.  The Parties represent that Kabo has obtained certain

3   related email communications from Lowe's, which Kabo argues are not exhaustive.

4          To the extent communications from JSP in response to the September 9 letter exist, they

5   may be responsive to Kabo's RFPs nos. 4, 5, and 34.  RFP no. 4 requests "[a]ll documents that

6   support, dispute, or otherwise relate to Kabo's claim of [JSP's] infringement of the '057 Patent."

7   RFP no. 5 requests "[a]ll documents referring or relating to any communication between JS

8   Products and Kabo regarding [JSP's] products and/or the alleged infringement of '057 Patent by JS

9   Products."  RFP no. 34 requests "[a]ll documents that support, dispute, or otherwise relate to

10  [JSP's] claim of non-infringement, invalidity, and/or unenforceability of the '057 Patent."  Insofar

11  as any written communications from JSP regarding the September 9 letter likely involve

12  discussions that "relate to" Kabo's claim of infringement or JSP's claim of non-infringement, they

13  are properly responsive to RFPs nos. 4 and 34.  Insofar as any such communications refer or relate

14  to communications between JSP and Kabo, they are responsive to RFP no. 5.

15          **7.    *"Recap of Notes" Following Internal JSP Meeting***

16          During his 30(b)(6) deposition, Moore acknowledged the existence of a document which an

17  internal  JSP email referred to as a "Recap of Notes" following a meeting regarding Kabo on

18  October 3, 2011.  *See Doc. #119, Exh. L* at 267:5-268:11.  JSP does not contend that the "Recap" is

19  outside the scope of Kabo's RFPs, but argues that it is privileged as work product.  JSP submitted

20  the Recap of Notes for *in camera* review.  *See Doc. #134, Exh. 10* (excluding attachments).

21          The work-product doctrine protects from discovery documents "prepared by a party or his

22  representative in anticipation of litigation."  *In re Grand Jury Subpoena (Mark Torf)*, 357 F.3d 900,

23  906 (9th Cir. 2004).  To be protected under the doctrine, documents must be prepared (1) in

24  anticipation of litigation or for trial; and (2) by or for another party or by or for that other party's

25  representative. *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998).  Here, aside from

26  bare assertions that the "Recap" was prepared in response to direct claims of patent infringement,

27  JSP makes no showing that the subject notes anticipated litigation.  Accordingly, and having

28  reviewed the Recap *in camera*, the Court finds the subject notes are not privileged and shall be

produced.

### 8.   *Documents and Communications with Proprietary Technologies, Inc.*

Kabo represents that JSP has produced wrench license agreements for licenses it holds for a number of Proprietary Technologies, Inc.'s ("PTI") patents.  During Moore's deposition, he identified documents and communications between JSP and PTI, production of which Kabo now seeks.  Kabo argues the documents are responsive to RFPs nos. 21, 22, 30 and 43.  The Court finds that the documents and communications sought are only arguably within the scope of RFPs nos. 30 and 43.  RFP no. 30 requests "[a]ll documents referring or relating to [JSP's] sales of wrenches to third parties from June 27, 2006 to the present."  Kabo asserts that documents and communications regarding licensing agreements relate to the sale of wrenches, arguing the purpose of entering a licensing agreement is to sell some product.  A reasonable reading of RFP no. 30, however, is as a request for documents relating to the actual sale of JSP wrenches, which JSP represents it has already produced.  RFP no. 43 requests "[a]ll communications with third parties referring or relating to this lawsuit or Kabo."  JSP argues that email communications with PTI to obtain a license to patented technology on an unrelated configuration feature of one of its wrench products does not relate to Kabo or the instant litigation.  The Court agrees, and finds that the documents and communications with PTI fall outside the ambit of Kabo's RFPs.

### 9.   *JSP's Supplier Exit Plan*

At his deposition, Moore testified that there is a supplier exit plan "on the table for consideration" to terminate Kabo's supplier relationship with JSP.  *See Doc. #119, Exh. L* at 273:10-275:9.  Kabo asserts the exit plan is responsive to its RFPs nos. 2, 28, and 49.  It appears to the Court that the exit plan is only potentially responsive to RFP no. 49 which seeks "[a]ll documents referring (*sic*) or concerning Kabo or the '057 Patent."  Nevertheless, on its face, JSP's supplier exit plan does not appear to be relevant to the instant action or reasonably calculated to lead to the discovery of admissible evidence.

### B.   Additional Rule 30(b)(6) Deposition

Kabo also moves for leave to conduct an additional 30(b)(6) deposition of JSP's person most knowledgeable due to alleged inadequacies of Moore's testimony and alleged inconsistencies

between Moore's testimony and JSP's discovery responses.  This District has previously held that additional depositions after a 30(b)(6) witness' inadequate testimony may be compelled.  *See, e.g., Great American Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 542-43 (D. Nev., March 24, 2008).  Here, as explained above, in the event there are no responsive SOPs or Ghant Lists, JSP shall provide Kabo with affidavits detailing the inquiry made to uncover any such documents.  These affidavits will cure any inconsistencies in or inadequacies of Moore's deposition testimony, and the Court will not compel additional 30(b)(6) depositions of JSP.  Accordingly,

> **IT IS HEREBY ORDERED** that Kabo's Motion to Compel (#120) is **granted** in part and **denied** in part as follows:

> (1)  JS Products shall produce the original detailed manufacturing drawings of the accused product;

> (2)  To the extent JS Products has in its possession, custody, or control standard operating procedures relating to document retention, quality control and assurances, and manufacturing tolerances, it shall produce them.  To the extent there are no responsive standard operating procedures, JS Products shall provide Kabo with an affidavit by the person most knowledgeable or other representative setting forth the extent of the inquiry made to discover any responsive standard operating procedures;

> (3)  To the extent JS Products has in its possession, custody, or control a Ghant List for the accused product, it shall be produced.  To the extent there is no responsive Ghant List, JS Products shall provide Kabo with an affidavit by the person most knowledgeable or other representative setting forth the extent of the inquiry made to discover any responsive Ghant List;

> (4)  JS Products shall produce the communications and emails between JS Products and Jerry Hsu, to the limited extent that they relate or refer to communications between JS Products and Kabo;

> (5)  JS Products shall produce any communications in response to the September 9, 2011 letter from Kabo to Lowe's; and

. . .

(6)     JS Products shall produce the "Recap of Notes" composed after the October 3, 2011

          JS Products meeting regarding Kabo

**IT IS FURTHER ORDERED** that JS Products shall make the above-enumerated

productions in compliance with this Order on or before **August 4, 2013**.

DATED this 3rd day of July, 2013.


_____

GEORGE FOLEY, JR.

United States Magistrate Judge

9