UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

JS PRODUCTS, INC.,                )
                                  )
                Plaintiff,        )           2:11-cv-01856-RCJ-GWF
                                  )
        vs.                       )
                                  )              ORDER
                                  )
KABO TOOL COMPANY; CHIH-CHING     )
HSIEH; JOHN DOE ENTITIES I-X; and )
JOHN DOES XI-XX,                  )
                                  )
                Defendants.       )
_____)

This case arises out of Plaintiff JS Products, Inc.'s alleged infringement of a patent

owned by Defendant/Counterclaimant Kabo Tool Company. Pending before the Court are

Kabo's three discovery-related motions: (1) a motion to reconsider Magistrate Judge Foley's

order granting a motion to quash (ECF No. 177); (2) a motion to strike Plaintiff's supplemental

invalidity contentions (ECF No. 210); and (3) a motion to strike portions of expert testimony

related to Plaintiff's supplemental invalidity contentions (ECF No. 233). For the reasons stated

herein, the motion to reconsider is denied and the motions to strike are granted in part and denied

in part. Specifically, the motions to strike are granted only to the extent that JSP intends to rely

on the supplemental prior art in support of its anticipation contention and denied with respect to

JSP's obviousness contention.

I.    FACTS AND PROCEDURAL HISTORY

        Plaintiff JS Products, Inc. ("JSP") is a Nevada corporation in the business of importing

and selling tools. (Compl., ECF No. 1, at 1–2). Defendant Kabo is a Taiwanese company that

1

owns U.S. Patent No. 7,066,057 (the " '057 Patent"), which relates to a wrench with jaws that have different tilt angles. (*Id*. at 1–2; '057 Patent, ECF No. 1, at 8).

On August 29, 2011, counsel for Kabo sent JSP a letter stating that Kabo owned the '057 Patent and that Kabo believed certain wrenches imported into the United States and sold by JSP (the "Accused Products") infringed on the '057 Patent. (Compl., ECF No. 1, at 2). Kabo further demanded that JSP cease and desist its allegedly infringing activity. (*Id*. at 2–3). In a responsive letter, JSP acknowledged  Kabo's demand but disagreed with its allegations and detailed several alleged defects in Kabo's infringement theory. (*Id.* at 3).

On November 17, 2011, JSP initiated the instant action against Kabo, claiming: (1) that JSP is entitled to a declaratory judgment of non-infringement and invalidity and/or unenforceability of the '057 Patent (claim 1); (2) intentional interference with contractual relations and/or prospective economic advantage (claim 2); and (3) commercial disparagement and/or corporate defamation (claim 3). (*Id*. at 3–5). Kabo has counterclaimed for infringement. (First Am. Countercl., ECF No. 153).

On December 7, 2011, Kabo filed a motion to dismiss claims two and three, which the Court granted, with leave to amend. (Order, ECF No. 33). JSP subsequently filed its First Amended Complaint ("FAC"), in which it has realleged the commercial disparagement and/or corporate defamation claim (now claim 2) and omitted the claim for intentional interference with contractual relations and/or prospective economic advantage. (FAC, ECF No. 34, at 6).

The Parties have engaged in lengthy and often contentious discovery, and the pending motions arise out of discovery-related disputes. Specifically, Kabo has moved for (1) reconsideration of Magistrate Judge Foley's order granting a motion to quash; (2) an order striking JSP's supplemental invalidity contentions; and (3) an order striking portions of expert

testimony related to the supplemental invalidity contentions. The Court now considers the pending motions.

## II.   MOTION TO RECONSIDER MAGISTRATE JUDGE'S ORDER (ECF No. 177)

Magistrate judges are authorized to resolve pretrial matters subject to district court review under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); LR IB 3-1(a) ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case pursuant to LR IB 1-3, where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary to law."). "A finding is clearly erroneous when although there is evidence to support it, the reviewing body on the entire evidence is left with the *definite and firm conviction that a mistake has been committed.*" *United States v. Ressam*, 593 F.3d 1095, 1118 (9th Cir. 2010) (emphasis added) (internal quotation marks omitted). A magistrate's pretrial order issued under 28 U.S.C. § 636(b)(1)(A) is not subject to *de novo* review, and the reviewing court "may not simply substitute its judgment for that of the deciding court." *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

Kabo seeks relief from Magistrate Judge Foley's order granting JSP's motion to quash a subpoena served on Sears Holding Company ("SHC") (the "Sears Order"), a non-party to the instant litigation. (*See* Order, ECF No. 171). Kabo does not challenge Magistrate Judge Foley's application of the law, but rather insists that the Sears Order was based upon clearly erroneous factual conclusions. (Mot. Recons., ECF No. 177, at 5). Specifically, Kabo claims that the subpoena it served on SHC on February 28, 2013, nearly two months after the December 31, 2012 cut-off date for "new" fact discovery, (Scheduling Order, ECF No. 130, at 2), was not

3

1    "new" but rather "follow-up" discovery that should have been permitted, (Mot. Recons., ECF

2    No. 177, at 6).

3            Although the Parties expressly agreed to a limited discovery extension that allowed both

4    sides to complete discovery that was "currently pending" or "timely noticed" prior to the

5    December 31 cut-off date, (Scheduling Order, ECF No. 95),[1] Kabo made no attempt to subpoena

6    SHC until well after that date. Nonetheless, Kabo now argues that Magistrate Judge Foley was

7    clearly erroneous in finding that the SHC subpoena was "new" and thus, outside the scope of the

8    limited extension. (Mot. Recons., ECF No. 177, at 5). The Court disagrees. Because Magistrate

9    Judge Foley's order is based on the clear limiting language of the discovery stipulation and

10   Kabo's undisputed tardiness, it presents nothing that leaves this Court with a "definite and firm

11   conviction that a mistake has been committed." *Ressam*, 593 F.3d at 1118. Accordingly, it

12   cannot be considered clearly erroneous and will not now be disturbed. Kabo's feigned ignorance,

13   (*Compare* Opp'n to Mot. Quash, ECF No. 147, at 7, n.4 (asserting that because Kabo lacked

14   knowledge of a particular item number or name, it could not serve SHC with a reasonably

15   particular subpoena prior to the cut-off for new discovery), *with* Opp'n to Mot. Recons., ECF

16   No. 188, at 4–6 (demonstrating that Kabo had ample information to issue a reasonably particular

17   subpoena )), claims of prejudice, (Mot. Recons., ECF No. 177, at 5–6 ), and unsupported

---

[1] In December 2012, the Parties stipulated to extend the fact discovery cut-off date to
February 14, 2013, but explicitly limited the extension to "allow the parties time to complete
such discovery which [was] *currently pending* or which [was] *timely noticed prior to the original
discovery cut-off date of December 31, 2012*." (Scheduling Order, ECF No. 95) (emphasis
added). In late January 2013, the Parties again stipulated to extend the fact discovery cut-off date
from February 14, 2013 to April 1, 2013, with the same express limitation. (Scheduling Order,
ECF No. 109). The Parties have subsequently signed several identical stipulated extensions. (*See,
e.g.*, Scheduling Orders, ECF Nos. 130 & 166).

allegations that JSP fraudulently induced the stipulated discovery limitation, (*Id.* at 7),[2] are

unpersuasive. The motion to reconsider is therefore denied.[3]

## III.   MOTIONS TO STRIKE (ECF Nos. 210 and 233)

Local Rules 16.1-1 to 16.1-21 contain special discovery rules applicable to patent cases

under this District's Patent Pilot Program. Local Rule 16.1-6 mandates disclosure of a patent

plaintiff's "Asserted Claims and Infringement Contentions" within fourteen days after the Rule

26(f) scheduling conference, and Local Rule 16.1-8 mandates disclosure of a patent defendant's

"Non-infringement, Invalidity, and Unenforceability Contentions" within forty-five days

thereafter. Local Rule 16.1-12 permits amendments to either of these disclosures for good cause

and absent undue prejudice to the opposing party:

> Amendment of initial disclosures required by these Rules may be made for good cause without leave of Court anytime before the discovery cut-off date. Thereafter, the disclosures shall be final and amendment of the disclosures may be made only by order of the Court upon a timely showing of good cause. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause, include: (a) a claim construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material prior art despite earlier diligent search; and, (c) recent discovery of nonpublic information about the Accused Instrumentality despite earlier diligent search. The duty to supplement discovery response does not excuse the need to obtain leave of Court to amend contentions.

---

[2] Kabo contends that it agreed to the discovery limitation because it believed no additional discovery "seemed necessary" in light of JSP's allegedly false representation that no additional documents or information existed. (Mot. Recons., ECF No. 177, at 7). Curiously, however, Kabo signed a subsequent stipulation containing identical limiting language on April 10, 2013, (Scheduling Order, ECF No. 166), more than two months after February 1, 2013—the date on which it claims to have discovered the alleged falsehoods. (*See* Reply, ECF No. 190, at 3).
[3] The Court acknowledges that JSP has withdrawn its opposition to the instant motion in order to avoid taking inconsistent positions with respect to the construction of the phrase "pending discovery" as it appears in the text of the stipulated discovery extension. (*See* Opp'n to Mot. Strike, ECF No. 211, at 21 (citing Notice of Withdrawal, ECF No. 206)). This, however, does not alter the conclusion that Magistrate Judge Foley did not commit clear error.

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28

These rules, like their counterparts in other districts, "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) (discussing the Northern District of California's local patent rules).

On July 23, 2013, over eighteen months after the February 6, 2012 deadline to serve invalidity contentions, JSP served what it calls "supplemental invalidity contentions," in which it identifies six additional prior art references in support of its original invalidity contentions. In response, Kabo has moved to strike the supplemental contentions, (ECF No. 210), and any related expert testimony, (ECF No. 233). Kabo contends that because these "untimely" supplemental contentions, which identify a new US patent and five physical wrenches, were filed without leave, they are impermissible and must therefore be stricken. The Court disagrees in part, finding that the supplemental contentions were not untimely, and that even if they were, JSP has shown good cause for the delay. However, because allowing JSP to supplement its anticipation theory with new art would, for the reasons explained below, be unduly prejudicial, the supplemental prior art is stricken for that purpose.

While Kabo needlessly attempts to complicate this issue, the proper course is quite straightforward. At bottom, the Court finds that Kabo's largely redundant motions are, for the most part, masked, premature motions in limine premised on an incorrect application of the local patent discovery rules. Kabo's position consists of four arguments, none of which are persuasive when applied to JSP's obviousness contention: (1) the local rules do not allow for "supplemental" contentions—they allow only amended contentions; (2) JSP neither requested nor obtained leave to file its supplemental contentions; (3) JSP has not and cannot show good cause for "supplementing" its contentions at this late date; and (4) in light of JSP's unexcused

failure to timely file, enforcement of Local Rule 16.1-12 requires striking the supplemental contentions and any expert testimony related thereto. (*See* Mot. Strike, ECF No. 210, at 3). The Court will address these arguments in turn.

First, the Court finds that JSP's use of the term "supplemental" instead of "amended" is purely an issue of semantics, and it is, in this case, a distinction without a difference. Notably, while the local rules clearly contemplate the addition of prior-art references uncovered during discovery, *see* LR 16.1-12, Kabo has not attempted to explain the difference between a supplemental contention and an amended contention or why a supplemental contention would be improper. In contrast, JSP claims that it resisted using the title "amended contentions" because it was not "amending" its contentions, but merely supplementing them with additional evidence. Specifically, JSP asserts that it has not advanced any new theories of invalidity and that its supplemental contentions simply identify five physical wrenches and one patent, the '536 patent, that further support its original, and unchanged, invalidity contentions. This assertion is only partially correct. While it is true that JSP has recited a consistent, albeit somewhat conflated, invalidity contention throughout this case, (*compare* Pl.'s Initial Disclosure of Invalidity Contentions, Dhillon Decl. Ex. A, ECF No. 210-1, at 12–13, *with* Pl.'s Supplemental Invalidity Contentions, Dhillon Decl. Ex. A, ECF No. 210-1, at 32), allowing JSP to support its initial anticipation contention with supplemental prior art would have the effect of allowing JSP to argue new, previously undisclosed, theories of anticipation.

JSP contends that the five supplemental physical wrenches that Kabo now seeks to strike are physical embodiments of the types of wrenches described in the patents cited in the initial invalidity contentions. (*See* Opp'n to Mot. Strike, ECF No. 211, at 17 (citing Pl.'s Initial Disclosure of Invalidity Contentions, ECF No. 210-1, at 12–13)). Specifically, JSP argues that

the Snap-On V-Series and Snap-On Wedge wrenches have the same design as the wrenches disclosed in U.S. Patent No. 2,687,056 (the "'056 patent"), that the Endres wrench has the same design as the wrenches disclosed in U.S. Patent No. 1,393,399 (the "'399 patent"), and that both the Snap-On OEX wrench and the Bonney C.V. wrenches are flat surfaced wrenches, or wrenches with no intentional taper, that nonetheless have a taper due to manufacturing variations, and therefore anticipate claim one of Kabo's '057 patent. (*Id.* at 18–19). Kabo does not dispute that JSP included the prior art patents in the initial invalidity contentions. (Mot. Strike Expert Test., ECF No. 233, at 8). Likewise, Kabo fails to argue, in any more than a conclusory manner, that the physical wrenches are not physical embodiments of the previously identified patents. (*See* Reply, ECF No. 236, 11–12).

Further, in almost every case, JSP produced the identified wrench before the original discovery cut-off date, December 31, 2012, and separately identified the wrenches in its supplemental initial disclosures as supporting JSP's defenses. (Gile Decl. ¶¶ 7–8, ECF No. 213). JSP also produced the supplemental patent reference before the original cut-off date. (*Id.* ¶ 12). The only physical wrench that JSP did not produce before December 31, 2012, the Snap-On OEX, was not discovered by JSP's expert until well after that date. (*Id.* ¶ 9).

In sum, the supplemental contentions merely identify six additional instances of prior art, all but one of which were disclosed prior to the original discovery cut-off date, in support of JSP's original invalidity contentions. And whether JSP refers to this filing as an amendment or a supplement is immaterial. The relevant question is whether the rules require the Court to strike any reference to the additional instances of prior art. With respect to JSP's obviousness contentions, as the Court presently understands them, this would be an extreme remedy, and, as explained below, it is neither justified nor required under the applicable rules. If, for example,

JSP intends to offer the supplemental physical wrenches in support of an expert's obviousness opinion, such evidence will not be excluded at this stage. Likewise, the Court makes no ruling, at this stage, with respect to how such evidence may be used to show obviousness.[4]

With respect to anticipation, however, it would be unduly prejudicial to allow JSP to bolster its contention with supplemental prior art added so late in the litigation.[5] Indeed, in the context of anticipation, the party claiming invalidity must cite each prior-art patent or piece of physical prior art that element-by-element anticipates the allegedly invalid patent. In this respect adding new instances of prior art would be analogous to adding a new causes of action—it would unfairly provide additional sets of elements whereby JSP could prove invalidity. Accordingly, the supplemental prior art must be, and is, stricken with respect to JSP's anticipation contention.

Second, the Court finds that JSP timely filed its supplemental contentions under Local Rule 16.1-12 and therefore obviated the need for leave to amend. Kabo's argument that leave was required incorrectly assumes that when JSP filed its July 23, 2013 supplement the applicable discovery cut-off had already passed. Indeed, Kabo's position is premised entirely on an application of the original December 31, 2012 cut-off date. Of Course, were this deadline to apply, JSP's subsequent filing would have required leave to amend. *See* LR 16.1-12. However, and as explained above, the Parties have stipulated to extend the original cut-off date at least nine times in order to complete discovery "that was pending or timely noticed prior to the original discovery cut-off date." *See supra* Part II. The most recent of these stipulations was signed after

---

[4] It is presently unclear how JSP intends to use the supplemental prior art to prove obviousness, and this Order confirms only that such evidence *could* be admissible for such purposes. Indeed, the Court makes no ruling as to whether such evidence is, in fact, admissible in any particular context.

[5] It is not entirely clear that JSP intends to rely on the supplemental prior art to support its anticipation contention. (*See* Pl.'s Supplemental Invalidity Contentions, Dhillon Decl. Ex. A, ECF No. 210-1, at 29). However, to the extent it does, any references to the supplemental art are stricken.

JSP served the disputed supplemental contentions, and the current cut-off date for such discovery is September 30, 2013. Kabo cannot dispute that invalidity discovery was pending before the original discovery cut-off or that JSP produced information on all but one of the physical wrenches prior to the original cut-off. Therefore, the Court cannot conclude that JSP's good faith effort to supplement its original contentions with information produced prior to the original cut-off is subject to the original discovery cut-off date. Under the plain language of Local Rule 16.1-12, JSP's filing was not untimely and leave was not required. This conclusion is only underscored by the fact that Kabo itself has moved the Court to adopt an even broader construction of the stipulated discovery limitation. *See supra* Part II. Furthermore, even assuming *arguendo* that the supplemental contentions were subject to the original cut-off date, the Court would be inclined to grant retroactive leave to amend based on the showing of good cause discussed below.

Third, under Local Rule 16.1-12, even when an amendment is timely filed, it must still be supported by good cause. JSP has plainly shown good cause for supplementing its contentions. Specifically, JSP claims that at the time it acquired and produced the wrenches it lacked two pieces of information necessary to supplement its invalidity contentions: (1) "measurements of the jaws of the wrenches," and (2) "definitive evidence corroborating the dates of manufacture or sale of the wrenches." (Opp'n, ECF No. 211, at 20). The measurements were necessary because Kabo's infringement claims relate to differences in tilt angle and jaw thickness that, in many cases, cannot be observed with the naked eye. (*Id.* at 7). However, according to JSP, because wrenches with intentionally tapered jaws never achieved commercial success, JSP struggled to find, study, and measure the necessary prior art wrenches. (*Id.* at 11). Furthermore, without out the physical wrenches, JSP could not determine their date of manufacture or sale. (*Id.*). This

information is critical for purposes of Local Rule 16.1-8, which requires not only the identification of the prior art device, but also "the date the offer or use took place or the information became known, and the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known."

JSP asserts that it continued to search for the wrenches and the additional corroborating evidence after the original cut-off date, and that this was one of the primary reasons it continued to stipulate to the limited discovery extensions. (*Id.*). Through this continued investigation, JSP ultimately found the documents and wrenches necessary to determine the manufacture date for four of the physical, prior art wrenches. (Gile Decl. ¶¶ 9–11, ECF No. 213). It was also able to take the necessary measurements. (*Id.*).

Kabo, however, contends that JSP should be barred from relying on these additional wrenches because it failed to make them available during an October 2012 inspection, in which Kabo requested to inspect all of the wrenches upon which JSP intended to rely. (Mot. Strike Expert Test., ECF No. 236, at 9). This argument is misleading. JSP's moving papers and other filings leave Kabo undoubtedly aware that JSP claims that it did not discover these four wrenches until after the date of the inspection. (*See e.g.*, Opp'n to Mot. Strike, ECF No. 211, at 12–15). Indeed, JSP has explained in excruciating detail how, when, and where it discovered each physical wrench. (*Id.* (citing Gile Decl., ECF No. 213)). Furthermore, JSP promptly produced images of each physical wrench as it was discovered. (*Id.*). In fact, JSP produced photos of all but one of the physical wrenches prior to the original discovery cut-off date, (*Id.*), and even though discovery remained open for several months, Kabo chose not to initiate any discovery related to any of the physical wrenches, including the one that JSP presented during

the October 2012 inspection. (*See* Dhillon Decl., ECF No. 210-1, at 52–54). Instead, and in response to JSP's good faith invitation to conduct additional discovery related to the supplemental contentions, Kabo informed JSP that it would file the instant motions to strike. (*Id.*). Thus, the October 2012 inspection is largely irrelevant.

Accordingly, the Court finds that JSP's moving papers, disclosures, and other filings demonstrate more than mere diligence; they reveal that JSP has made a commendable effort to timely locate and disclose the information upon which it now intends to rely. Therefore, the difficulty and delays encountered while locating this information constitutes good cause for an amendment under Local Rule 16.1-12. Kabo's repeated claims to the contrary are conclusory, disingenuous, and unavailing.

Fourth, despite numerous opportunities to do so, Kabo has failed to identify any specific prejudice that could not have been cured through additional discovery. Moreover, even if JSP's delay in filing the supplemental contentions was somehow prejudicial, which is difficult to assume in light of Kabo's express refusal to conduct any related discovery, (*see* Dhillon Decl., ECF No. 210-1, at 52–54), striking these highly material supplemental contentions and the related expert testimony would be an extreme and unjustified remedy. Indeed, the proper remedy, were such prejudice actually shown, would be to reopen discovery.

Here, however, Kabo has already had a chance to conduct discovery related to the supplemental contentions: Not only was the majority of the supplemental prior art disclosed before the original discovery cut-off, Kabo also stipulated to an applicable September 30, 2013, extended discovery cut-off date, (*see* Scheduling Order, ECF No. 209). During these several months, Kabo expressly declined to conduct discovery related to the supplemental prior art. Therefore, its current claims of prejudice warrant neither striking the supplemental contentions

nor reopening discovery. Accordingly, Kabo's premature attempt to exclude the supplemental

prior art references and related expert testimony is largely unavailing, and therefore, the motions

to strike are largely denied. The motions are, however, granted to the limited extent that JSP

intends to rely on the supplemental prior art to support is anticipation contention. Of course, it is

no coincidence that, under these narrow circumstances, actual prejudice would result.

## CONCLUSION

IT IS HEREBY ORDERED that the motion to reconsider (ECF No. 177) is DENIED.

IT IS FURTHER ORDERED that the motion to strike Plaintiff's supplemental invalidity

contentions (ECF No. 210) is GRANTED in part and DENIED in part. It is granted only to the

limited extent that Plaintiff intends to rely on the supplemental prior art to support its

anticipation contention. It is denied as to the obviousness contention.

IT IS FURTHER ORDERED that the emergency motion to strike portions of Plaintiff's

expert reports (ECF No. 233) is GRANTED in part and DENIED in part. It is granted only to the

limited extent that the expert reports rely on the supplemental prior art to support Plaintiff's

anticipation contention. It is denied as to the obviousness contention.

IT IS SO ORDERED.

Dated:  March 19, 2014

_____
ROBERT C. JONES
United States District Judge