**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| JS PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 2:11-cv-01856-RCJ-GWF |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| | ) | |
| KABO TOOL COMPANY; CHIH-CHING | ) | |
| HSIEH; JOHN DOE ENTITIES I-X; and | ) | |
| JOHN DOES XI-XX, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This case arises out of Plaintiff JS Products, Inc.'s alleged infringement of United States Patent No. 7,066,057, which is owned by Defendant/Counterclaimant Kabo Tool Company. Pending before the Court are the parties' claim construction briefs (ECF Nos. 40 and 41). Pursuant to a recent stipulation, only four (4) disputed claim terms remain. (Stip. Eliminating Certain Claim Construction Disputes, ECF No. 249, at 2). On April 15, 2014, the Court held a *Markman* claim construction hearing. After considering the briefs and material submitted by the parties, the arguments of counsel at the claim construction hearing, and the record before the Court, the Court now construes the disputed claim terms.

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff JS Products, Inc. ("JSP") is a Nevada corporation in the business of importing and selling tools. (Compl., ECF No. 1, at 1–2). Defendant Kabo is a Taiwanese company that owns U.S. Patent No. 7,066,057 (the "'057 Patent"), which relates to a wrench with jaws that have different tilt angles. (*Id.* at 1–2; '057 Patent, ECF No. 1, at 8).

On August 29, 2011, counsel for Kabo sent JSP a letter stating that Kabo owned the '057 Patent and that Kabo believed certain wrenches imported into the United States and sold by JSP (the "Accused Products") infringed on the '057 Patent. (Compl., ECF No. 1, at 2). Kabo further demanded that JSP cease and desist its allegedly infringing activity. (*Id.* at 2–3). In a responsive letter, JSP acknowledged  Kabo's demand but disagreed with its allegations and detailed several alleged defects in Kabo's infringement theory. (*Id.* at 3).

On November 17, 2011, JSP initiated the instant action against Kabo, claiming: (1) that JSP is entitled to a declaratory judgment of non-infringement and invalidity and/or unenforceability of the '057 Patent (claim 1); (2) intentional interference with contractual relations and/or prospective economic advantage (claim 2); and (3) commercial disparagement and/or corporate defamation (claim 3). (*Id.* at 3–5). Kabo has counterclaimed for infringement. (First Am. Countercl., ECF No. 153).

On December 7, 2011, Kabo filed a motion to dismiss claims two and three, which the Court granted, with leave to amend. (Order, ECF No. 33). JSP subsequently filed its First Amended Complaint ("FAC"), in which it has realleged the commercial disparagement and/or corporate defamation claim (now claim 2) and omitted the claim for intentional interference with contractual relations and/or prospective economic advantage. (FAC, ECF No. 34, at 6). The parties have engaged in lengthy, and often contentious, discovery. (*See* Order, ECF No. 245).

On June 7, 2012, and consistent with the local rules, the parties filed a Joint Claim Construction and Prehearing Statement ("JCCPHS"), in which they claim to have exchanged proposed terms for claim construction, met and conferred regarding those proposed terms, and exchanged preliminary constructions and supporting evidence. (JCCPHS, ECF No. 36). Initially, the parties could not agree on a construction for any of the eight disputed claim terms, (*id.*), and

each side submitted a claim construction brief in support of its respective position, (ECF Nos. 40 and 41). Only Kabo submitted an opposition brief. (ECF No. 46).

On April 4, 2014, the parties stipulated that four of the eight disputed terms do not require construction. (Stip. Eliminating Certain Claim Construction Disputes, ECF No. 249, at 2). The remaining disputed terms are (1) "jaw," (2) "distal ends," (3) "smaller," and (4) "different." (JCCPHS, ECF No. 36, at 2–4). On April 15, 2014, the Court held a *Markman* hearing.

## II.   THE '057 PATENT

The '057 Patent includes one independent claim and two dependent claims. Specifically, and with emphasis added to the disputed claim terms, the '057 Patent claims the following:

1.  A wrench comprising:

    a handle and a head connected to an end of the handle and a first *jaw* and a second *jaw* extending from the head, the first *jaw* having a first inclined surface defined in a first side thereof and the second *jaw* having a second inclined surface defined in a first side thereof, the first inclined surface and the second inclined surface respectively tapered toward two respective *distal ends* of the first and second *jaws* defining respective tilt angles relative to a horizontal plane, the tilt angle relative to the horizontal plane of the first inclined surface is *different* from the tilt angle relative the horizontal plane of the second inclined surface, so that a thickness of the *distal end* of the first *jaw* is *smaller* than a thickness of the *distal end* of the second *jaw*.

2.  The wrench as claimed in claim 1, wherein each respective inclined surface insects a respective root portion of the first and second jaws.

3.  The wrench as claimed in claim 1, wherein each respective inclined surface insects a root portion of the head.

U.S. Patent No. 7,066,057 (filed June 27, 2006) (emphasis added).

## III.   PROSECUTION HISTORY

An examination of the '057 Patent's prosecution history reveals the difficulty in determining the scope of the first claim ("Claim 1"). The '057 Patent was issued from U.S.

Patent Application Number 10/910,290, filed August 4, 2004 (the "'290 Application"). When Kabo initially filed the '290 Application, it intended to patent a wrench with a pair of jaws with sloping faces or surfaces sharing a common or identical incline. Specifically, the Background of the Invention section of the '290 Application states the following:

> A conventional wrench is disclosed in Fig. 1 and generally includes a handle with a head which includes two jaws. The handle and the jaws are located at the same plane so that when using the wrench to rotate an object such as a bolt head, the handle and the two jaws are rested on the on the surface where the bolt is connected. The user has to lift the handle slightly and insert his fingers in the space between the surface and the handle. However, this also makes the head and the two jaws to be lifted an angle so that the two jaws embrace the bolt head at an angle. In other words, only limited clamping area [*sic*] of the two jaws contact the bolt head and this could make the jaws slip away from the bolt head.

> *The present invention intends to provide a wrench wherein the two jaws each have an inclined surface so that the handle is oriented upward when the two jaws are rested on the surface with their inclined surfaces. By this way, the user can hold the handle comfortably and the bolt head is clamped by the clamping surfaces of the two jaws.*

U.S. Patent Application Serial No. 10/910,290 (filed Aug. 04, 2004) (emphasis added); '057 Patent, col. 1, lines 14–31. Similarly, the Summary of the Invention provides that:

> The present invention relates to a wrench including a handle and a head connected to an end of the handle. A first jaw and a second jaw extend from the head. The first jaw has a first inclined surface defined in a first side thereof and the second jaw has a second inclined surface defined in a first side thereof. The first inclined surface and the second inclined surface are respectively tapered toward two respective distal ends of the first and second jaws. *The first and second inclined surfaces share a common plane which is inclined relative to a horizontal* plane so that when the first and second inclined surfaces are rested on a surface, the handle is oriented upward and the user can comfortably hold the handle while the object is clamped by the two jaws. The present invention will become more obvious from the following description when taken in connection with the accompanying drawings which show, for purposes of illustration only, a preferred embodiment in accordance with the present invention.

'290 Application; '057 Patent, col. 1, lines 35–52 (emphasis added).

Consistent with Kabo's belief that its invention comprised a wrench having jaws with common inclines, Kabo presented claims to that invention in the '290 Application. Indeed, as originally presented in the '290 Application, Claim 1 stated:

> 1.      A wrench 1 [*sic*] comprising:
> a handle and a head connected to an end of the handle and a first jaw and a second jaw extending from the head, the *first jaw having a first inclined surface defined in a first side thereof and the second jaw having a second inclined surface defined in a first side thereof*, the first inclined surface and the second inclined surface respectively tapered toward two respective distal ends of the first and second jaws, *the first and second inclined surfaces sharing a common plane* which is inclined relative to a horizontal plane.

'290 Application (emphasis added). During the prosecution of the '290 Application, however, the Examiner concluded that wrenches with jaws sharing a common plane that is inclined relative to a horizontal plane were anticipated by prior art. (Office Action, ECF No. 41-1, at 28–31 ("Either one of Foor (2,687,056) or Schlehr (1,393,399) discloses all of the limitations of claim 1, i.e., a wrench comprising two jaws extending from the head, each having a first inclined surface in a first side thereof and tapering towards the end of the jaws and sharing a common plane that is inclined relative to a horizontal plane.")). Accordingly, the Examiner rejected Claim 1 as anticipated. (*Id.*).

Seeking to claim an invention distinguishable from the cited prior art, Kabo filed an amendment to the original Claim 1, which incorporated the following additional language: "a thickness of the distal end of the first jaw being *smaller* than a thickness of the distal end of the second jaw so that the tilt angle relative the horizontal plane of the first inclined surface is *different* from the tilt angle relative the horizontal plane of the second inclined surface." (Amendment to the Claims, ECF No. 41-1, at 37) (emphasis added). In an effort to make the '290 Application's specification correspond to the newly claimed invention, Kabo also amended the specification to include the same additional text:

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>AMENDMENT TO THE SPECIFICATION</u>

Please replace the paragraph beginning at page 3, lines 9 to 19, with the following rewritten paragraph:

Referring to Figs. 1 to 3, the wrench 1 of the present invention comprises a handle 10 and a head 11 connected to an end of the handle 10. A first jaw 12 and a second jaw 13 extend from the head 11 so as to define a space between the first and second jaws 12, 13. The first jaw 12 has a first inclined surface 120 defined in a first side thereof and the second jaw 13 has a second inclined surface 130 defined in a first side thereof. The first inclined surface 120 and the second inclined surface 130 are respectively tapered toward two respective distal ends of the first and second jaws 12, 13. The first and second inclined surfaces 120, 130 share a common plane which is inclined relative to a horizontal plane. A thickness of the distal end of the first jaw 12 is smaller than a thickness of the distal end of the second jaw 13, **<u>so that the tilt angle relative the horizontal plane of the first inclined surface 120 is different from the tilt angle relative the horizontal plane of the second inclined surface 130 as shown in Fig. 3</u>**. The common plane insects root portions of the first and second jaws 12, 13.

(*Id.* (bold and underline emphasis in the original)); *see also* '057 Patent, col. 2, lines 8–26.

The final language of Claim 1 resulted from the entry of an Examiner's Amendment, which amended Claim 1 to its present form. (Examiner's Amendment, ECF No. 41-1, at 47). The following quotation illustrates how the claim has evolved from its original form (using strikethrough to show deletions and underline to show additions):

1.    A wrench comprising:
a handle and a head connected to an end of the handle and a first jaw and a second jaw extending from the head, the first jaw having a first inclined surface defined in a first side thereof and the second jaw having a second inclined surface defined in a first side thereof, the first inclined surface and the second inclined surface respectively tapered toward two respective distal ends of the first and second jaws~~, the first and second inclined surfaces sharing a common plane which is inclined relative to a horizontal plane~~. <u>defining respective tilt angles relative to a horizontal plane, the tilt angle relative to the horizontal plane of the first inclined surface is different from the tilt angle relative the horizontal plane of the second inclined surface, so that a thickness of the distal end of the first jaw is smaller than a thickness of the distal end of the second jaw.</u>

These changes are critical; instead of covering a wrench with jaws sharing a common plane, Claim 1 now relates to a wrench with inclined jaws that extend at *different* angles (rather than the

6

same angle or on a common plane), which results in the ends of the jaws having different thicknesses.

The '057 Patent, however, lacks significant detail regarding the newly claimed invention. Indeed, the '290 Application did not originally include any text describing the invention now set forth in Claim 1, *see* '290 Application, and the amendment to the specification merely repeats the amended claim language without any additional explanation, *see* '057 Patent, col. 2, lines 8–26. Likewise, the other written portions of the '057 Patent were never amended to correspond to the significant new additions to Claim 1. In fact, some portions still contemplate a wrench with inclined jaws sharing a common plane (i.e., having identical tilt angles). *See, e.g.*, '057 Patent, col. 1, lines 35–52. Accordingly, because the instant dispute, and indeed this entire case, turns on the meanings of terms in the amended text of Claim 1, the intrinsic record is, at best, of limited value.

## IV.   CLAIM CONSTRUCTION

Under the terms of the stipulation eliminating certain claim construction disputes, (ECF No. 249, at 2), only four disputed claim terms remain. The proposed constructions, coupled with the cited supporting references, are set forth below:

| Term | Kabo's Proposed Construction | JSP's Proposed Construction |
|---|---|---|
| (1)  jaw | No construction necessary, but if a construction is required:<br><br>"jaw"<br><br>*Intrinsic*<br>1:6–9, 14–15, 26–29, 36–37, figs. 1–8; 2:10–17 | Plain and ordinary meaning:<br><br>"one of two or more parts that grasp or hold something"<br><br>*Extrinsic*<br>Random House Dictionary (2012) (*See* Exhibit B, ECF No. 38, at 11). |

7

| | | |
|---|---|---|
| (2)  distal ends | No construction necessary, but if a construction is required:<br><br>"distal ends"<br><br>*Intrinsic*<br>figs. 1–7; 2:15–25<br><br>*Extrinsic*<br>"distal" – "remote from the point of attachment or origin, from a point conceived of as central, or from the point of view: as *a*: located away from the center of the body <the distal end of a bone>—opposed to proximal; *b*: located away from the mesial plane of the body—opposed to mesial"<br><br>Webster's Third New International Dictionary, Unabridged, Merriam-Webster 2002. | Indefinite relative to the patent. |
| (3)  smaller | No construction necessary, but if a construction is required:<br><br>"smaller"<br><br>*Intrinsic*<br>figs. 1–7; 2:20–25 | Plain and ordinary meaning:<br><br>"being comparatively less in size"<br><br>*Extrinsic*<br>Webster's New Collegiate Dictionary (1981) (*See* Exhibit B, ECF No. 38, at 17). |
| (4)  different | No construction necessary, but if a construction is required:<br><br>"different"<br><br>*Intrinsic*<br>figs. 1–7; 2:20–25 | Plain and ordinary meaning:<br><br>"not identical"<br><br>*Extrinsic*<br>Random House Dictionary (2012) (*See* Exhibit B, ECF No. 38, at 16). |

(JCCPHS, ECF No. 38, at 2). For the reasons stated herein, the Court adopts Kabo's position with respect to the terms "jaw," "distal ends," and "smaller," and finds that these terms require no construction. However, with respect to the term "different," the Court adopts JSP's proposed construction and will therefore construe the term to mean "not identical."

## A. Legal Standard

The construction of terms found in patent claims is a question of law to be determined by the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). "[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). Consequently, courts construe claims in the manner that "most naturally aligns with the patent's description of the invention." *Id.*

The first step in claim construction is to look to the language of the claims themselves. "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). A disputed claim term should be construed in light of its "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312. In some cases, the ordinary meaning of a disputed term to a person of skill in the art is readily apparent, and claim construction involves "little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. Moreover, a district

9

court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (Claim construction "is not an obligatory exercise in redundancy."); *see also Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) (finding no error in non-construction of "melting"); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) (finding no error in the lower court's refusal to construe "irrigating" and "frictional heat").

Claim construction may deviate from the ordinary and customary meaning of a disputed term only if (1) "a patentee sets out a definition and acts as his own lexicographer," or (2) "the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Ordinary and customary meaning is not the same as a dictionary definition. *Phillips*, 415 F.3d at 1321. "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent. Yet heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." *Id.* "Thus, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is therefore "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of claims." *Phillips*, 415 F.3d at 1315. Courts can also look to the prosecution history as part of the intrinsic record to determine how the Patent Office and the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, the prosecution history lacks the clarity of the specification and is often less useful for claim construction purposes. *Id.*

Finally, "[a] court may, in its discretion, receive extrinsic evidence in order to aid the court in coming to a correct conclusion as to the true meaning of the language employed in the patent." *Markman*, 52 F.3d at 980 (internal citations and quotation marks omitted). Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* Although such evidence may aid the court in construing claim terms, "it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1319. Thus, "while extrinsic evidence can shed useful light on the relevant art, . . . it is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* at 1317 (internal quotation marks omitted).

**B. Jaw**

JSP argues that "jaw" should be construed as "one of two or more parts that grasp or hold something," (JCCPHS, ECF No. 38, at 2), and Kabo contends that the term requires no construction, (*id.*). The Court agrees with Kabo. The term "jaw" requires no construction because, in the context of the '057 Patent, its plain and ordinary meaning would be clear to a person of ordinary skill in the relevant art. As explained above, claim construction is "a matter of resolution of disputed meanings and technical scope, to clarify and when *necessary* to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy." *U.S. Surgical Corp.*, 103 F.3d at 1568 (emphasis added). JSP's proposed construction is unnecessary, and it is therefore rejected. Accordingly, the Court will not construe the term "jaw."

1

**C.  Distal Ends**

2          JSP contends that the term "distal ends" is indefinite under 35 U.S.C. § 112, and Kabo

3   argues that the term need not be construed. The Court again agrees with Kabo.

4          The requirement that claims be sufficiently "definite" is set forth in what is now 35

5   U.S.C. § 112(b), which mandates that "[t]he specification shall conclude with one or more claims

6   particularly pointing out and distinctly claiming the subject matter which the applicant regards as

7   his invention." "The definiteness inquiry focuses on whether those skilled in the art would

8   understand the scope of the claim when the claim is read in light of the rest of the specification."

9   *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001). "Yet,

10  because claim construction frequently poses difficult questions over which reasonable minds

11  may disagree, proof of indefiniteness must meet 'an exacting standard.'" *Haemonetics Corp. v.*

12  *Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010) (quoting *Halliburton Energy*

13  *Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008)). In *Haemonetics*, the Federal

14  Circuit explained:

15
16          Only claims not amenable to construction or insolubly ambiguous are indefinite.
             A claim is not indefinite merely because parties disagree concerning its
17          construction. An accused infringer must thus demonstrate by clear and convincing
             evidence that one of ordinary skill in the relevant art could not discern the
18          boundaries of the claim based on the claim language, the specification, the
             prosecution history, and the knowledge in the relevant art.
19
20  *Id.* (internal citations and quotation marks omitted). Indefiniteness is a question of law.

21  *Honeywell International, Inc. v. U.S.*, 609 F.3d 1292, 1301 (Fed. Cir. 2010).

22          JSP argues that the term "distal end" is indefinite because the patent "fails to identify an

23  'objective anchor' or frame of reference from which to determine what is covered by the claim

24  and what is not." (Claim Construction Br., ECF No. 41, at 18). Specifically, JSP complains that

25  the '057 Patent does not identify "how to determine where the distal end of the jaw is located."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(*Id.*). The Court disagrees, finding that in the context of the '057 Patent, the plain and ordinary meaning of the phrase "*distal ends* of the first and second jaws" would be clear to a person of ordinary skill in the art. Indeed, the detailed description of the preferred embodiment indicates that items 12 and 13 of the figures depict the first and second jaws. '057 Patent, col. 2, line 10. These drawings make unambiguously clear that each jaw has only one end. *Id.* at figs. 1–7. Moreover, the specification plainly states that both the first and second jaw "extend from the head," *id.* col. 2, line 10–11, meaning that each jaw has only one "end." Therefore, the term "distal," as it is used to describe each jaw's singular end, is mere surplusage. That is, the term "distal" provides no further limitation than the limitation that would have resulted from simply referring to the jaws' respective "ends." Stated another way, the meaning and location of the jaws' "distal ends" is readily apparent because neither jaw has a second end, and therefore, each jaws' single end is necessarily what Claim 1 describes as the "distal end."

JSP's reliance on *Datamize, LLC v. Plumtree Software*, 417 F.3d 1342 (Fed. Cir. 2005) is misplaced. Unlike the dispute in *Datamize*, this is not a dispute over a term creating a purely subjective standard, such as "aesthetically pleasing," *see* 417 F.3d at 1348, where the lack of an "objective anchor" would render the patent indefinite. Stated simply, the scope of the phrase "distal ends," unlike the phrase "aesthetically pleasing," does not depend "solely on the unrestrained subjective opinion of a particular individual purportedly practicing the invention." *Id.* Indeed, quite the opposite is true: Determining the location of a jaw's "distal end" is an objective inquiry. Thus, the instant dispute turns on whether JSP has demonstrated by clear and convincing evidence that the reference is insolubly ambiguous such that one of ordinary skill in the art, relying on the intrinsic record, could not discern the boundaries of the claim. *See*

13

*Haemonetics*, 607 F.3d at 783. Based on the analysis above, the Court concludes that JSP has failed to carry this demanding burden.

**D.  Smaller**

JSP contends that "smaller" should be construed as "being comparatively less in size," (JCCPHS, ECF No. 38, at 2), and Kabo argues that the term requires no construction, (*id.*). The Court declines to construe the term "smaller" for the same reason it declined to construe "jaw." In the context of the '057 Patent, the plain and ordinary meaning of this term would be clear to a person of ordinary skill in the relevant art. Indeed, "a sound claim construction need not always purge every shred of ambiguity. The resolution of some line-drawing problems—especially easy ones like this one—is properly left to the trier of fact." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007). Furthermore, it is unclear how JSP's redundant construction could aid the trier of fact in any meaningful way. Accordingly, the Court finds it unnecessary to construe the term "smaller," and JSP's proposed construction is therefore rejected.

**E.  Different**

JSP argues that the term "different" should be construed as "not identical," (JCCPHS, ECF No. 38, at 2), and Kabo contends that the term requires no construction, (*id.*). The Court agrees with JSP and hereby construes the term "different," as it appears in Claim 1, as meaning "not identical."

The plain meaning of the term "different" is not readily apparent from the '057 Patent. Indeed, and as explained above, the '057 Patent lacks significant detail regarding the invention described in the amended version of Claim 1. *See supra* Part III. The '290 Application did not originally contemplate a wrench having jaws with "different" tilt angles. *Id.* This limitation was added when Claim 1 was amended. *Id.* The specification, however, was not amended to provide

14

any context for interpreting the new term. In fact, the single amendment to the specification merely repeats the amended claim language without any further description. *Id.* Thus, the specification lacks any detail regarding this new, but extremely significant, limitation, *id.*, and its scope is not immediately clear.

The term "different," as it appears in the '057 Patent, is arguably susceptible to at least two constructions: (1) it could be construed broadly, to mean "not identical," as JSP has proposed; or (2) it could be construed to require a particular type or degree of difference, as Kabo proposed during the claim construction hearing, (Hr'g, Apr. 15, 2014, Las Vegas Courtroom 6B, at 10:07:24 a.m. (arguing that the term different should require "differences that mean something, differences that, at least on the manufacturing side, when you are actually manufacturing, you can get down, you can make that difference, you can have that precision, and that's what we are talking about in this case"); *id.* at 10:08:10 ("Difference can't mean identical because identical suggests that there can't be any difference whatsoever.").

The Federal Circuit has construed the term "different" on at least two occasions. In *Sorensen v. Int'l Trade Comm'n*, 427 F.3d 1375, 1379 (Fed. Cir. 2005), the court upheld a broad construction similar to "not identical." However, in *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340 (Fed. Cir. 2008), the court concluded that the term "different" required a particular type of difference, and not merely any conceivable difference.

The patent in *Sorensen* pertained to a method of spacing plastic mold sections during sequential steps of plastic injection molding. 427 F.3d at 1377. The claim in question required "injecting a second plastic material having *different characteristics* than the first plastic material . . . ." *Id.* at 1378 (emphasis added). The Federal Circuit construed "different characteristics" to mean "*any difference* in characteristics between the two injected materials," including a

difference in color alone, and concluded that the term did not require the disputed material to have different molecular properties. *Id.* at 1379 (emphasis added).

The court in *Kyocera* distinguished *Sorensen* and declined to adopt its unqualified construction:

> Qualcomm also contends that this court's construction of the same claim term in [*Sorensen*], mandates a broad construction of "different" in this different patent . . . . Qualcomm reads that particular holding to create a rule that use of the claim term "different" without further qualification must mean "any difference."
>
> *Sorensen* created no such categorical rule. In *Sorensen*, this court only discerned a broad meaning for the term "different" after concluding that (a) the claim term in the context of the entire claim connoted that "different" implied any difference in characteristics and (b) the specification and the prosecution history showed "no disavowal of claim scope in relation to material characteristics." This court's analysis of the context of this different claim as a whole, as well as the intrinsic record for this different patent, to arrive at the proper context for the term "different" is thus not inconsistent with *Sorensen.* In sum, the specification and context of the claim term in *Sorensen* did not qualify or limit the nature of the "different" characteristics of the plastic; the specification and context in this case show that the "different" wireless communications means a difference in the method of communication, not simply any conceivable difference. Accordingly, this court sustains the ITC determination that "different" first and second wireless communications refers to two different methods of communication.

*Kyocera*, 545 F.3d at 1349 (internal citations omitted).

Informed by these two decisions, this Court concludes that an unqualified construction, like the one adopted in *Sorensen*, is the appropriate construction in this case. Like the patent in *Sorensen*, nothing in the '057 Patent qualifies or limits the nature or degree of the "difference" in tilt angle. *See generally* '057 Patent. Likewise, nothing in the prosecution history indicates a disavowal of the claim scope with respect to such differences. Accordingly, a qualified construction like the one adopted in *Kyocera* would be inappropriate, and the Court must conclude that the term "different," as it appears in Claim 1, implies any difference in tilt angle. Stated another way, the Court must conclude that, in the context of the '057 Patent, the plain and

16

ordinary meaning of the term "different" is "not identical." JSP's proposed construction is therefore adopted, and the term "different" is construed accordingly.

This construction not only reflects the term's plain and ordinary meaning, *see, e.g.*, Oxford English Dictionary (2d ed. 1989) ("OED") *available online at* http://dictionary.oed.com (defining "different" as "A.1.a Having characteristics or qualities which diverge from one another; having unlike or distinguishing attributes; not of the same kind; not alike; of other nature, form, or quality" and  as "A.2 . . . denying identity, but without any implication of dissimilarity; not the same, *not identical*, distinct." (emphasis added)), it is also consistent with both *Sorensen* and *Kyocera*, and it avoids a construction that would likely render Claim 1 indefinite under 35 U.S.C. §112(b). Indeed, any interpretation of "different" involving a degree of difference beyond "not identical" cannot be supported by the intrinsic record or any extrinsic evidence (because Kabo has not disclosed any extrinsic evidence to support its proposed construction of the term). While the intrinsic record expresses a relationship—"different from"—it neither discloses a standard for measuring the degree of difference nor provides, to one of ordinary skill in the art, any discernable guidance regarding the extent of the difference the '057 Patent covers. Accordingly, a construction of the term that implies a required type or degree of difference, would likely render the boundaries of Claim 1 undiscernible such that it would not survive a §112(b) invalidity attack. Therefore, the Court declines to adopt such a construction.

///

///

///

17

## CONCLUSION

IT IS HEREBY ORDERED that the four (4) disputed claim terms in U.S. Patent No. 7,066,057 are construed according to this Order. The disputed claim terms are construed as follows:

| Term | Construction |
|------|--------------|
| jaw | no construction required |
| distal ends | no construction required |
| smaller | no construction required |
| different | not identical |

IT IS SO ORDERED.

Dated:  April 17, 2014

_____
ROBERT C. JONES
United States District Judge