UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JS PRODUCTS, INC.,                          )
                                            )
                    Plaintiff,              )         Case No.  2:11-cv-01856-RCJ-GWF
                                            )
vs.                                         )         **ORDER**
                                            )
KABO TOOL COMPANY,                          )         **Motion to Compel (#301)**
                                            )
                    Defendant.              )
_____ )

    This matter is before the Court on Defendants' Motion to Compel Production of Measurements Taken by JS Products, Inc.'s Expert Gene Olson (#301), filed on May 19, 2014. Plaintiff filed its Opposition to the Motion to Compel (#324) on June 5, 2014.  Defendants filed their Reply (#351) on June 16, 2014.  The Court conducted a hearing in this matter on June 25, 2014.

## BACKGROUND

    Plaintiff JS Products, Inc. seeks a declaratory judgment that U.S. Patent No. 7,066,057 (the "'057 patent") owned by Defendant Kabo Tool Company ("Kabo") is invalid.  JS Products also seeks a declaratory judgment that certain wrench products sold by it in the United States do not infringe the '057 patent, assuming it is valid.  Defendant Kabo has, in turn, asserted a counterclaim for patent infringement against JS Products, Inc. based on its sale of allegedly infringing wrenches.

    The '057 patent relates to the design of a wrench that has jaws that have different tilt angles. Pursuant to Claim One of the patent, the jaws are angled so that they are on a different plane from the wrench handle.  The jaws are also on different planes from each other and the jaws have different thicknesses.  This design allegedly provides for better contact between the jaws and the

nut or bolt head to which the wrench is applied.  JS Products purchased allegedly infringing wrenches from its Taiwanese supplier Porauto.  The wrenches were manufactured by another Taiwanese tool manufacturer, Jin Wan.  JS Products sold the allegedly infringing wrenches in the United States to Lowes Hardware which marketed the wrenches under the brand name "Kobalt Cross Form Wrenches" (hereinafter the "accused wrenches").  It is undisputed that the jaws of the accused wrenches are on a different plane from the wrench handle.  There is a dispute, however, whether the jaws are designed to be on different planes from each other or to have different thicknesses from each other.

In January 2014, Defendant Kabo disclosed the initial report of its expert witness, S. Philip Buckley, P.E.  Mr. Buckley opined that the accused wrenches infringe the '057 patent.  Mr. Buckley's opinion was based, in part, on his evaluation of drawings of the accused wrenches that were produced by JS Products and, in part, on Mr. Buckley's measurement of 74 accused wrenches that he purchased from a Lowes Hardware Store.  In January 2014, Plaintiff JS Products also disclosed the initial report of its expert witness Gene Olson, P.E.  *Appendix 2 to Motion to Compel (#304), Exhibit C.*  Mr. Olson's initial report dealt only with his opinion that the '057 patent is invalid.  Mr. Olson did not address whether the accused wrenches infringe the '057 patent.

JS Products subsequently disclosed a rebuttal expert report by Mr. Olson dated February 11, 2014. *Appendix 3 to Motion to Compel (#304), Exhibit D ("Olson Rebuttal Report").*  In the first part of his rebuttal report, Mr. Olson again addressed issues relating to the alleged invalidity of the '057 patent. *Olson Rebuttal Report*, ¶¶ 6-32.  In the second part of his rebuttal report, which begins with the heading "VIII.  THE JS PRODUCTS WRENCHES DO NOT INFRINGE THE PATENTS-IN-SUIT," Mr. Olson provided a rebuttal to Mr. Buckley's infringement opinion. *Id., pg. 9.*  Mr. Olson criticized two aspects of Mr. Buckley's infringement opinion.  First, he criticized Mr. Buckley's reliance on drawings of the accused wrenches produced by JS Products to support his infringement opinion.  Mr. Olson argued that the drawings do not provide enough detail regarding the specific dimensions of the wrenches to support a conclusion that any variances in the angles or thicknesses of the jaws are due to design, rather than acceptable tolerances in the manufacturing process. *Olson Rebuttal Report,* ¶¶ 33-36.  Secondly, Mr. Olson criticized Mr.

1   Buckley's reliance on the results of his measurements of the 74 accused wrenches.  Mr. Olson

2   stated:

3          I examined the measurement results reported by Mr. Buckley and
       reported in the Buckley Report, ¶¶ 84, 89.  These results show that as

4          measured by Mr. Buckley, the average difference in height between
       the jaws is about 0.1mm or 100μm.  This is about the thickness of an

5          average human hair.  I would not expect a user to either see such a
       small difference in thickness between the two jaws, or feel the

6          difference in thickness between the two jaws.  Without relatively
       sophisticated measuring equipment, users would not be able to detect

7          any difference in the thickness between the two jaws.

8      *Olson Rebuttal Report,* ¶ 37.

9         Mr. Olson further stated that "[t]he results reported in the Buckley Report, ¶¶ 84, 89, show

10  that about half of the time the first jaw is thicker than the second, and about half of the time the

11  second jaw is thicker than the first." *Id.*, ¶ 38.  Mr. Olson stated that because the '057 patent

12  appears to call for the first jaw to be thicker than the second jaw, the measurements undermine Mr.

13  Buckley's opinion that the accused wrenches infringe the patent.  *Id.*

14        Kabo's counsel deposed Mr. Olson on April 10, 2014 regarding the opinions in his two

15  reports.  Mr. Olson testified that shortly after he was retained by JS Products, he purchased inch

16  and metric sets of accused wrenches from a Lowes Hardware Store in Kenosha, Wisconsin.  He

17  testified that he made measurements of these wrenches, using the same methodology he used to

18  measure the "prior art" wrenches discussed in his initial report.  *Appendix 3 to Motion to Compel*

19  *(#304), Exhibit H ("Olson Deposition"), pp. 54-57.*  Kabo's counsel asked Mr. Olson if he

20  compared his measurements with those made by Mr. Buckley.  Mr. Olson responded: "In general.

21  Not in specific because they were different wrenches." *Id., p. 55:10-15.*  Mr. Olson was also asked

22  whether his measurements revealed differences in tilt angles.  He responded affirmatively.  *Id, p.*

23  *57:11-22.*  Plaintiff moves for production of the measurements that Mr. Olson made of the accused

24  wrenches he purchased.  Defendant opposes the motion on the grounds that Mr. Olson's

25  measurements are irrelevant to the opinions in his initial and rebuttal reports.

26                          **DISCUSSION**

27        In determining whether Mr. Olson's measurements of the accused wrenches are

28  discoverable, the court must decide whether the measurements are relevant to the expert opinions

1   that Mr. Olson is expected to render at trial and whether Mr. Olson considered the measurements in

2   forming his opinions.

3       Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure provides that an expert who has

4   been retained or specially employed to provide expert testimony in the case, must prepare a written

5   report that contains "(I) a complete statement of all opinions the witness will express and the basis

6   and reasons for them; [and] (ii) the facts or data considered by the witness in forming them."  These

7   requirements apply to both initial and rebuttal expert reports.  Rule 26(a)(2)(D).  Rule 26(b)(4)(A)

8   provides that a party may depose any person who has been identified as an expert whose opinions

9   may be presented at trial.  Rule 26(b)(4)(B) states, however, that Rule 26(b)(3)(A) and (B) (the

10  "work product" rule) protect from discovery drafts of any expert report or disclosure.  Rule

11  26(b)(4)(C) states that the work product rule also protects from discovery communications between

12  a party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), except to the

13  extent the communications "(ii) identify facts or data that the party's attorney provided and that the

14  expert considered in forming the opinions to be expressed."

15      In *Republic of Equador v. Mackay*, 742 F.3d 860 (9th Cir. 2014), the Ninth Circuit recently

16  discussed the rules governing expert witness discovery since the 1993 amendment to Rule 26(a)

17  which added the requirement for written reports by retained or specially employed expert witnesses.

18  The court quoted the advisory committee notes to the 1993 amendment to Rule 26(a)(2) which

19  stated that "[t]he report is to disclose the data and other information considered by the expert," and

20  that "[g]iven this obligation of disclosure litigants should no longer be able to argue that materials

21  furnished to their experts to be used in forming their opinions---whether or not ultimately relied

22  upon by the expert---are privileged or otherwise protected from disclosure when such persons are

23  testifying or being deposed."  742 F.3d at 868.  The court noted that following the 1993

24  amendments, many courts held that Rule 26 creates a bright-line rule mandating disclosure of all

25  documents, including attorney opinion work product, given to testifying experts.  *Id.*, at 869, citing

26  *Regional Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697 (6th Cir. 2006), *Elm Grove*

27  *Coal Co. v. Director*, 480 F.3d 278, 301 (4th Cir. 2007), and *In re Pioneer Hi-Bred Intern., Inc.*,

28  238 F.3d 1370, 1375 (Fed.Cir. 2001).  Under this bright-line rule, the term "considered" is broadly

4

interpreted.  *See Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 462-463 (E.D.Pa. 2005).

In 2010, Rule 26(b)(4) was amended to provide protection against disclosure of draft expert reports and attorney-expert communications.  Quoting the advisory committee notes to the 2010 amendments, the court in *Republic of Equador* noted that these protections "'do not impede discovery about the opinions to be offered by the expert or the development, foundation or basis of those opinions.'"  The court further stated:

> Indeed, the scope of permissible "disclosure and discovery allowed" remains "broad."  Fed.R.Civ.P. 26(b)(4) advisory committee's notes (2010 amendments).  For example, the rule allows for discovery of: (a) the testing of material involved in litigation and notes concerning any such testing; (b) alternative analyses, testing methods, or approaches; and (c) "communications the expert had with anyone other than the party's counsel about the opinions expressed." Fed.R.Civ.P. 26(b)(4) advisory committee's notes (2010 amendments).  However, discussions with counsel about the "potential relevance of facts or data" and more general discussions "about hypotheticals or exploring possibilities based on hypothetical facts" are protected.  *Id.*  Thus, materials containing "factual ingredients" are discoverable, while opinion work product is not discoverable.  *See* Fed.R.Civ.P. 26(a)(2)(b) advisory committee's notes (2010 Amendments).

*Republic of Equador*, 742 F.3d at 870.

Mr. Olson's measurements of the accused wrenches are relevant to his rebuttal to Mr. Buckley's infringement opinion.  Mr. Olson challenges Mr. Buckley's infringement opinion, in part, based on the small differences in the angles and thicknesses of the accused wrench jaws as measured by Mr. Buckley.  Mr. Olson's own measurements of the accused wrenches, however, might provide a basis for Kabo to impeach his rebuttal opinions.  As stated in *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 462-463 (E.D.Pa. 2005), one of the important policy considerations underlying the bright-line rule is the facilitation of effective cross-examination.  *See also Musselman v. Phillips*, 176 F.R.D. 194, 198 (D.Md. 1997).  Although Mr. Olson may not have relied on his own measurements in expressing his rebuttal opinions, he certainly considered those measurements in formulating his opinions within the meaning of Rule 26(a)(2)(B)(ii) and Rule 26(b)(4)(C).  The measurements are factual data which are not protected from discovery under Rule 26(b)(4)(C).

. . .

5

Kabo's counsel first learned of the measurements during Mr. Olson's deposition on April 10, 2014.  Because JS Products was obligated to disclosure of these measurements pursuant Rule 26(a)(2)(B)(ii), they should have been disclosed to Kabo prior to Mr. Olson's deposition so that Kabo's counsel could have examined him about them.  Kabo is therefore entitled, if it wishes, to reopen Mr. Olson's deposition to question him about his measurements of the accused wrenches. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Production of Measurements Taken by JS Products, Inc.'s Expert Gene Olson (#301) is **granted** as follows:

1. JS Products shall produce Mr. Olson's measurements of the accused wrenches to Defendants on or before **July 9, 2014**.

2. Defendants may reopen Mr. Olson's deposition for the purpose of questioning him about his measurements of the accused wrenches.  JS Products shall produce Mr. Olson for further deposition on this issue, at its own expense, and at a reasonable date, time and location to be agreed upon by the parties, or as hereafter ordered by the Court.

DATED this 26th day of June, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge