**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| JS PRODUCTS, INC., | ) ) | |
| Plaintiff, | ) ) | 2:11-cv-01856-RCJ-GWF |
| vs. | ) ) | **ORDER** |
| | ) | |
| KABO TOOL COMPANY *et al.*, | ) ) | |
| Defendant. | ) ) | |

Pending before the Court is Plaintiff JS Products, Inc.'s ("JSP") Motion for Attorney's Fees (ECF No. 377) related to its action for declaratory judgment of non-infringement against Defendant Kabo Tool Company ("Kabo"). Kabo submitted its Response (ECF No. 392) and JSP filed a Reply (ECF No. 400). The Court also considers the parties' individual motions to seal (ECF Nos. 381, 391, 402). For the reasons contained herein, the motion is GRANTED in part and DENIED in part.

**I.    PROCEDURAL HISTORY AND FACTS**

JSP is a Nevada corporation in the business of importing and selling tools. (Compl. 1–2, ECF No. 1). Kabo is a Taiwanese company that owns U.S. Patent No. 7,066,057 ("the '057 patent"), which relates to a wrench with jaws that have different tilt angles. (The '057 Patent, Ex. A, ECF No. 1). In relevant part, the '057 patent claims the following:

> A wrench comprising a handle and a head connected to an end of the handle and a first jaw and a second jaw extending from the head, the first jaw having a first

> inclined surface defined in a first side thereof and the second jaw having a second inclined surface defined in a first side thereof, the first inclined surface and the second inclined surface respectively tapered toward two respective distal ends of the first and second jaws defining respective tilt angles relative to a horizontal plane, the tilt angle relative to the horizontal plane of the first inclined surface is **different** from the tilt angle relative the horizontal plane of the second inclined surface, so that a thickness of the distal end of the first jaw is **smaller** than a thickness of the distal end of the second jaw.

(*Id.*) (emphasis added). On August 29, 2011, Kabo's counsel sent JSP a letter stating that Kabo owned the '057 patent and that Kabo believed certain wrenches imported into the United States and sold by JSP (the "Accused Products") infringed on the '057 patent. (Compl. 2). Kabo further demanded that JSP cease and desist its allegedly infringing activity. (*Id.* at 2–3). A similar letter was sent to JSP's customer, Lowe's. In a responsive letter, JSP acknowledged Kabo's demand but disagreed with its allegations and detailed several alleged defects in Kabo's infringement theory. (*Id.* at 3). On November 17, 2011, JSP initiated the present action against Kabo, seeking (1) declaratory judgment of non-infringement and invalidity of the '057 patent ("Claim 1"); (2) relief for intentional interference with contractual relations or prospective economic advantage ("Claim 2"); and (3) relief for commercial disparagement or corporate defamation ("Claim 3"). (*Id.* at 3–5).

On December 7, 2011, Kabo filed a motion to dismiss Claim 2 and Claim 3, which the Court granted with leave to amend. (February 24, 2012 Order, ECF No. 33). The Court reasoned that both state-law tort claims were preempted by federal patent law and that JSP had not provided evidence of "bad faith" on Kabo's part to overcome that preemption. (*Id.*). JSP subsequently filed its First Amended Complaint ("FAC"), in which it realleged Claim 3 and omitted Claim 2. (FAC 6, ECF No. 34). JSP eventually stipulated to withdraw Claim 3 as well (Stipulation, ECF No. 126), leaving only the claim of non-infringement and invalidity.

2

The parties spent the next two years engaged in lengthy, and often contentious, discovery that included the filing of numerous motions to compel. On April 15, 2014, the Court conducted a *Markman* hearing in which the parties debated about the proper construction of the disputed claim terms. After the hearing, the Court accepted JSP's argument that the term "different" as it appeared in the patent should be construed to mean "not identical." (April 17, 2014 Order 16–17, ECF No. 262). JSP also proposed a definition for the term "smaller," but the Court determined that "smaller" did not need special construction and would be given its plain meaning. (*Id.* at 14). At issue was whether the term incorporated some limitation on what thickness of the distal end of the first jaw would be too small to count as a difference. JSP asserted that Kabo should not be allowed to argue at trial that the term "smaller" encompassed only those differences in thickness that were greater than the manufacturing tolerance. (Transcript 45:18–46:14, ECF No. 265). The Court refused to construe the term in any manner because it believed the jury would understand the plain import of the word "smaller." However, the Court explained that even though it was not construing the term, if Kabo argued at trial that the "difference" relevant to its patent only existed when the difference in thickness exceeded the manufacturing tolerance, then the Court would sustain an objection of improper construction. (*Id.* at 48:21–49:1).

On May 14, 2014, JSP filed a motion for summary judgment on its non-infringement and invalidity claim. (ECF No. 277). The Court granted the motion, finding that the prior art anticipated Kabo's design. (July 28, 2014 Order 17, ECF No. 373). JSP now seeks attorney's fees and costs that it incurred in the prosecution and defense of this case. Specifically, JSP seeks $1,176,361.50 in attorney's fees and $98,936.31 in costs and other expenses.

///

///

## II. DISCUSSION

### A. Attorney's Fees and Expenses

JSP offers three separate theories to support its right to recovery of expenses in this case. First, JSP argues that 35 U.S.C. § 285 allows the Court to award it attorney's fees and expenses. Second, JSP argues that Kabo's conduct during the litigation of this case entitles JSP to attorney's fees and expenses under 28 U.S.C. § 1927. Third, JSP argues that the Court's inherent power allows it to grant an award of attorney's fees based on the conduct of the parties.

#### 1. 35 U.S.C. § 285

In patent litigation, "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The purpose of a fee award under 35 U.S.C. § 285 is to compensate the prevailing party for costs incurred as a result of the losing party's unreasonable conduct. *See Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013).[1] An award of fees is reserved for those "rare case[s] in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014). The Supreme Court recently explained that an "exceptional" case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. However, a case "presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 1757.

---

[1] An award of attorney's fees under 35 U.S.C. § 285 is governed by Federal Circuit law. 28 U.S.C. § 1295(a)(1); *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 182 F.3d 1356, 1358–59 (Fed. Cir. 1999).

Whether a court ultimately finds that "a case is 'exceptional' under § 285 is a matter of discretion." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014). Indeed, district courts are not limited to any specific formula when determining whether a case is "exceptional," but instead should consider the "totality of the circumstances" on a case-by-case basis. *Octane Fitness*, 134 S. Ct. at 1756. Factors relevant to this determination include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). The applicable evidentiary standard is a preponderance of the evidence. *Id.* at 1758.

There can be no dispute that JSP is the prevailing party here. *See Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004) (stating that a "prevailing party" is one that receives "at least some relief on the merits" of the case). The question of attorney's fees, therefore, turns on whether this case is exceptional such that it "stands out" because of either its substantive strength or Kabo's manner of litigation. *Octane-Fitness*, 134 S. Ct. at 1756.

### a. Substantive strength of the claims

This case is not the "prototypical exceptional case" in which a non-practicing entity, or "patent troll," threatens or files a lawsuit merely to extract a settlement from the alleged infringer. *See Lumen View Tech., LLC v. Findthebest.com, Inc.*, No. 13 CIV. 3599 (DLC), 2014 WL 2440867, at *1 (S.D.N.Y. May 30, 2014). Rather, Kabo is an active player in its industry that invests time and money into researching and designing tools. (Answer 5–6, ECF No. 9). A patentee, however, has the responsibility to ensure that accusations of infringement are not made lightly. *See Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1074 (Fed. Cir. 2002). For instance, if Kabo knew that its case was meritless, then that would support a finding that this

5

case is exceptional. *See Yufa v. TSI Inc.*, No. 09-cv-01315-KAW, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014). JSP argues that Kabo knew at the inception of this litigation that its patent was likely invalid and that its counterclaim for infringement was meritless. Kabo contends that it was entitled to presume the '057 patent's validity and, even though JSP's motion for summary judgment was granted, Kabo had the right to enforce its patent against potential infringers. Kabo is correct that the "[d]efeat of a litigation position, even on summary judgment, does not warrant an automatic finding that the [claim] was . . . baseless." *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 650 F.3d 1305, 1315 (Fed. Cir. 2010). Instead, the Court must evaluate the totality of the circumstances surrounding the case. *Octane-Fitness*, 134 S. Ct. at 1756.

It is understood that "a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 2007). However, a patentee does not act in good faith if it raises an infringement claim in which "no reasonable litigant could realistically expect success on the merits." *GP Indus. Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007) (citation omitted). For this reason, proper investigation is an important pre-requisite to filing an infringement claim, or as in this case, sending cease-and-desist letters. *See Antonious*, 275 F.3d at 1074. An adequate investigation requires the patentee to "interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300 (Fed. Cir. 2004). Kabo asserts that it acted in good faith because it obtained the opinion of an expert prior to sending the cease-and-desist letters to JSP and Lowe's, as well as the opinion of counsel. (Defs.' Opp'n 1, 6–7, ECF No. 392). Kabo does

not cite to evidence in the record to support these contentions, however. The Court thus moves on to examine the merits of Kabo's case.

Kabo argues that a person "skilled in the art" could read the claim language and understand "different" and "smaller" as referring to a difference beyond the manufacturing tolerance. Kabo points out that this position was supported by JSP's own expert, Gene Olson. (*See* Rebuttal Expert Report ¶ 31, ECF No. 396-3). The Court agrees that this is the only argument that could have possibly saved Kabo's patent from invalidity prior to summary judgment. Nonetheless, the words "manufacturing tolerance" do not appear on the face of the patent, and Kabo did not propose in its claim construction brief that either the term "different" or "smaller" be construed to exclude differences within the manufacturing tolerance. (*See* Kabo's Initial Claim Construction Brief 1, ECF No. 40). Rather, Kabo argued that "different" "is a straightforward word and so commonly understood in the English language" that it needed no construction. (Kabo's Opp'n to JSP's Proposed Claim Construction 10–11, ECF No. 46). Kabo made the same argument for the term "smaller." (*Id.* at 11). Nevertheless, Kabo attempted to infuse these terms with a definition during the *Markman* hearing that would have incorporated manufacturing tolerances, which the Court refused. JSP contends that Kabo did not propose this construction of the terms in its claim construction brief because such a limitation on "different" and "smaller" would have necessarily defeated its infringement claim since the Accused Products were allegedly within the manufacturing tolerance. In other words, JSP believes Kabo was unreasonable to allow the litigation to continue because Kabo had to choose between asserting either the validity of the '057 patent at the expense of the infringement claim or the infringement of the '057 patent at the expense of its validity.

1    However, the Court cannot say that it was necessarily unreasonable for Kabo to pursue its
2 infringement claim despite JSP's perceived "catch-22." Patentees, after all, are entitled to the
3 "presumption of patent validity." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2245
4 (2011). And at least one expert in this case understood "different" to exclude differences within
5 the manufacturing tolerance. (Rebuttal Expert Report ¶¶ 31–32). The Patent and Trademark
6 Office arguably made this same inference since it issued the '057 patent even after an evaluation
7 of the prior art, notwithstanding that the language of the claim does not allude to manufacturing
8 tolerances. It was not until the *Markman* hearing that the Court effectively foreclosed any
9 further argument that the terms "different" or "smaller" were limited by tolerances. In fact, JSP
10 sought to construe the term "smaller" specifically so that Kabo could not present evidence of
11 manufacturing tolerances to the jury. (Transcript at 45:8–21). Therefore, the Court finds that it
12 was not until after the April 15, 2014 *Markman* hearing that the true weakness of Kabo's
13 position was solidified. Moreover, it was just one month after that the *Markman* hearing that JSP
14 filed its motion for summary judgment, which the Court granted. Prior to the conclusion of
15 claim construction, the Court does not find that it was so unreasonable for Kabo to pursue its
16 infringement claim, and defend against JSP's invalidity claim, that this case stands out as
17 exceptional based on the merits.
18    JSP also argues that this case was brought by Kabo in an effort to harass JSP and disrupt
19 its business relationships. The Court, however, notes that it was JSP and not Kabo that filed the
20 present lawsuit. Nevertheless, JSP alleges that this dispute arose because JSP sourced the
21 Accused Products from one of Kabo's Taiwanese competitors. JSP believes that Kabo sent the
22 cease-and-desist letters to retaliate against JSP for purchasing tools from a different source.
23 Similar arguments were raised in JSP's original complaint and were dismissed by the Court
24

because JSP did not provide the Court with evidence of Kabo's bad faith. (February 24, 2012 Order (finding the claims preempted by federal patent law absent a showing of bad faith)). Although JSP was provided leave to amend its claims of tortious interference and corporate defamation, only the defamation claim appeared in JSP's amended complaint, and it too was eventually withdrawn. (Stipulation 1–2). While the timing of this case makes JSP's suspicions plausible, JSP again fails to provide the Court with evidence that Kabo's motivation in sending the cease-and-desist letters, or raising an infringement counterclaim in this case, was to harass JSP. Without evidence in the record, JSP's suspicions, even if well-founded, are not enough to cause this case to stand out as exceptional.

### b. Manner of litigation

JSP accuses Kabo of multiplying the proceedings in this case by filing frivolous motions and engaging in tactics to delay a resolution. This case currently has more than 400 docket entries, including a variety of motions filed by Kabo plus accompanying responses and replies. However, intensive motion practice does not necessarily mean that a litigant proceeded in a frivolous or wasteful manner. *See LendingTree, LLC v. Zwillow, Inc.*, No. 3:10-cv-00439-FDW, 2014 WL 5147551, at *13 (W.D.N.C. Oct. 9, 2014) (stating that a "hard-fought" case is not necessarily an "exceptional" one). The Court recognizes that at least some of the motions had merit. Kabo, for example, successfully moved to compel certain discovery and to limit the effect of JSP's "Supplemental Invalidity Contentions." (March 19, 2014 Order, ECF No. 245). And although success on a motion does not imply that the filing of the motion was prudent or even worthwhile, repeated lack of success would be more indicative of frivolous motion practice. JSP identifies Kabo's motion to realign (ECF No. 172) and its subpoena to secure discovery from third-party Sears Holding Company ("SHC") as proof that Kabo was simply delaying the

resolution of this case. The Court cannot agree. In both instances, Kabo provided a justification for its actions. It filed the motion to realign because it believed the true nature of the suit would be reflected if it was named as plaintiff. (Defs.' Opp'n 19–20). And it sought discovery from SHC to assist in determining damages. (*Id.* at 19). Even if the Court found these explanations to be weak, a couple of ill-advised litigation tactics do not justify the award of attorney's fees. *See LendingTree, LLC*, 2014 WL 5147551, at *12 (finding that plaintiff's litigation tactics were no more "than a decision to pursue a weak case and the ensuing zealous representation by [plaintiff's] counsel based on the hand of cards they had been dealt"). There is nothing else in the three year history of this case that convinces the Court that Kabo's manner of litigation causes it to stand out. Indeed, there is nothing facially abusive or egregious in the way Kabo conducted itself during the prosecution and defense of this case. *See Gametex, LLC v. Zynga*, No. CV 13-2546 RS, 2014 WL 4351414, at *4–5 (N.D. Cal. Sept. 2, 2014) (stating that post-*Octane Fitness* decisions to award attorney's fees have "concerned egregious behavior").[2] The Court, therefore, finds in its discretion that this case is not "exceptional" given the totality of the circumstances. Accordingly, an award of attorney's fees and other expenses are not warranted under Section 285.

While the Court finds that Kabo's aggressive litigation techniques fall short of being facially abusive or egregious, the Court is wary of situations in which companies accuse others of infringement in bad faith, either by sending cease-and-desist letters or by initiating formal proceedings. Nonetheless, the Court recognizes that parties must be granted a certain amount of leeway in determining whether to bring a lawsuit and then in adopting a litigation strategy. *See*

---

[2] JSP argues that Kabo's settlement offer of $10 million, which was made back in August of 2012, is also indicative of Kabo's unreasonable behavior in this case because Kabo's own expert eventually found that reasonable royalties for a non-exclusive patent license in this case would be worth "between $109,341 and $218,683. "(Expert Report of Thomas R. Varner 34, ECF No. 316-4). After discovery and expert opinion, it is easy to say that the $10 million offer was ridiculous. However, JSP does not provide the amounts of Kabo's subsequent settlement offers so that the Court might determine whether Kabo maintained such an extreme position in light of additional discovery.

*Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 446 (5th Cir. 1992) (noting that a party should be given some leeway in litigation before sanctions are warranted).  Kabo has walked a fine line in this case, but without "smoking-gun" type evidence that Kabo acted with the sole intent to disrupt JSP's business, the Court feels that this case is not exceptional.  However, if the Court is willing to allow Kabo some leeway in this case, it would be inequitable to not provide the same courtesy to JSP.  The magistrate judge sanctioned JSP $10,667.00 for failing to comply with certain discovery orders. (Oct. 15, 2014 Order 5–6, ECF No. 397).  Given the aggressive manner of Kabo's motion practice, the Court does not find that JSP should be sanctioned for this one instance of failing to provide Kabo with exactly what it sought during discovery.  Although the magistrate judge granted sanctions, he determined that the prejudice to Kabo for JSP's failure was minimal. (*Id.* at 2).  Moreover, the initial amount of fees that Kabo demanded in its motion for sanctions was $130,000, far above what the magistrate judge felt was an appropriate sanction when evidence of prejudice was so minimal. (*Id.* at 3).  Further, the sanction did not arise from JSP's complete failure to comply with the magistrate judge's order, but rather JSP had not produced everything that Kabo requested in the motion to compel that the magistrate judge had granted. (*Id.* at 3–5).  There is no evidence that JSP completely ignored the magistrate judge's order or that JSP did not make some effort to comply with the magistrate judge's directives. (*See* May 2, 2014 Order 11, ECR No. 274) (finding that JSP had only failed to exercise reasonable care in complying with the order).  On these facts, the Court finds that the sanctions against JSP are not warranted.  Therefore, the Court strikes the magistrate judge's orders (ECF Nos. 274, 397) granting Kabo's motion for sanctions and its motion for attorney's fees and costs.

///

///

11

**2. 28 U.S.C. § 1927**

Likewise, the Court finds that attorney's fees and expenses are not appropriate under 28 U.S.C. § 1927. Under Section 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The purpose of section 1927 is to both deter attorney misconduct and to compensate the victims of attorney's malfeasance. *Haynes v. City & Cnty. of S.F.*, 688 F.3d 984, 987–88 (9th Cir. 2012).[3] A court may impose sanctions under Section 1927 if it finds that an attorney "acted with the purpose" to multiply proceedings, "or that counsel acted recklessly or in bad faith." *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 640 (9th Cir. 2010).

Here, JSP argues that Kabo unreasonably and vexatiously multiplied the proceedings in this case by filing multiple motions to compel discovery that Kabo knew was not available, filing the motion to realign that was dismissed, and by pursuing discovery from SHC. The various motions to compel were not completely unavailing for Kabo. In fact, it succeeded at least in part on a number of those motions, including one motion in which the Court ordered JSP to make its expert available for further deposition at JSP's own expense. (June 26, 2014 Order, ECF No. 369). In response to another Kabo motion, the magistrate judge found it necessary to go so far as to sanction JSP for its failure to comply with a prior order, (Oct. 15, 2014 Order), though the Court now strikes those sanctions. So the Court is hard pressed to find that the motions to compel were filed recklessly. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) (stating that a filing is submitted recklessly if it raises frivolous arguments). Similarly, the motion to realign, while unsuccessful, was dismissed by the magistrate judge without prejudice.

---

[3] Regional circuit law applies to determining whether sanctions are warranted in a patent case when the issue is not unique to the Federal Circuit's exclusive jurisdiction. *See Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004).

The magistrate judge, therefore, must have found at least some merit to Kabo's arguments or else he would have likely denied the motion with prejudice.

Finally, JSP alleges that Kabo's failure to pursue discovery from SHC once JSP withdrew its objection thereto is evidence that Kabo's counsel was simply multiplying proceedings in an effort to harass JSP. (Pl.'s Mem. In Support of Mot. Att'y's Fees 13–14, ECF No. 378).  Kabo responds that the discovery it sought from SHC was relevant to its damages and that it is appealing this Court's order to quash its subpoena. (Def.'s Resp. 19; Notice of Appeal, ECF No. 388).  The Court does not find JSP's reasoning to be persuasive.  The fact that the motion to quash the subpoena was granted does not necessarily mean that Kabo was unreasonable in pursuing the discovery.  If the information that Kabo sought to obtain would have better informed it of damages, then it certainly was not sought recklessly.  Without additional evidence that Kabo was only attempting to multiply the proceedings by seeking discovery from SHC, the Court cannot find that Kabo acted unreasonably or vexatiously in doing so.  Therefore, the Court concludes that sanctions under Section 1927 are not warranted in this case.

### 3. Court's Inherent Authority

The Court also finds that its inherent authority does not allow a granting of attorney's fees or expenses in this case.  Courts are "vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  The court's power extends to "both conduct before the court and that beyond the court's confines" and it allows the court to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 44, 45–46.  A court may exercise its inherent authority to impose sanctions "if the court specifically finds bad faith or conduct tantamount to bad faith." *B.K.B.*, 276 F.3d at

1108 (quoting *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001)). Bad faith arises when "a litigant is substantially motivated by vindictiveness, obduracy, or mala fides" regardless of whether the litigant's assertion is colorable. *Id.* (quoting *Fink v. Gomez*, 239 F.3d at 992).

In this case, the Court cannot make a specific finding of bad faith. The filing of the lawsuit was done by JSP, not Kabo, so there could not be bad faith in commencing litigation. If there was evidence that Kabo sent the initial cease-and-desist letters solely to harm JSP's business, then that might qualify as bad faith. However, as stated above, the Court is not presented with any evidence in the record that Kabo acted vindictively when it notified JSP and Lowe's regarding the '057 patent. By raising its counterclaim of infringement and then vigorously pursuing that claim while also defending against JSP's allegations of invalidity, Kabo did what any other "sophisticated company" would have done "to protect [its] current business system[]." *LendingTree, LLC*, 2014 WL 5147551, at *13. This is not to say that the Court condones or agrees with each of Kabo's individual motions or the litigation tactics its counsel employed in this case. The Court simply does not find that there is sufficient evidence of bad faith on Kabo's part to warrant sanctions.

**B.    Costs**

JSP also seeks to recover the costs it incurred during the prosecution and defense of this case. Rule 54 of the Federal Rules of Civil Procedure provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Costs under Rule 54, however, are not synonymous with expenses. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012). Where "expenses" include all of the expenditures made during the course of the litigation, "costs" are limited to those expenditures listed in 28 U.S.C. § 1920. *Id.* "Taxable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts,

14

1  consultants, and investigators." *Id.*  The costs recoverable under Rule 54 include "clerk fees,

2  court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies,

3  docket fees, and compensation of court-appointed experts." *Id.*  Moreover, calculating costs is

4  "most often merely a clerical matter that can be done by the court clerk." *Id.* (quoting *Hairline*

5  *Creations, Inc. v. Kefalas*, 664 F.2d 652, 656 (7th Cir. 1981).

6  In this case, JSP has submitted a "Bill of Costs" to the Court with an itemized list of its

7  incurred costs.  Kabo challenges an award of costs on its face because it argues that JSP engaged

8  in misconduct during the course of the litigation that precludes such an award.  During the three

9  years of litigation in this case, JSP was once sanctioned for failing to comply with an order

10  regarding a discovery matter. (May 2, 2014 Order).  The magistrate judge awarded Kabo

11  attorney's fees for that sanction in the amount of $10,667.00 that he ordered should be offset

12  against any amount JSP was awarded from the present motion, (Oct. 15, 2014 Order 5–6), but

13  which the Court now strikes as explained above.  Although Kabo takes issue with JSP's general

14  approach to this case, the Court does not find that JSP's conduct was sufficiently offensive that it

15  should be denied costs despite its status as the prevailing party.  Thus, the Court considers each

16  of Kabo's individual objections to JSP's Bill of Costs.

17  First, Kabo argues that JSP cannot recover costs for its *pro hac vice* applications filed on

18  behalf of John Sganga and Joshua Stowell.  Kabo contends that *Kalitta Air L.L.C. v. Central*

19  *Texas Airborne System, Inc.*, 741 F.3d 955 (9th Cir. 2013), specifically prohibits recovery of

20  costs expended on *pro hac vice* applications.  The Court agrees.  In *Kalitta*, the Ninth Circuit

21  held "that Section 1920(1) does not allow for an award of *pro hac vice* fees as taxable costs." *Id.*

22  at 958.  Accordingly, JSP cannot receive reimbursement for the $400.00 it spent in this regard.

23  Kabo also argues that JSP should not be entitled to recover video deposition costs.  Kabo argues

24

15

1  that recent Supreme Court and Ninth Circuit authority disapprove of allowing such costs.  Kabo

2  is correct that in *Kalitta* the Ninth Circuit reversed an award of costs for the editing of a video

3  deposition.  However, the court distinguished the costs for deposition editing, which a party is

4  not allowed to recover, from the costs of making copies of the deposition videotape. *Id.* at 959

5  ("The cost of editing deposition videotapes into clips to be played at trial in lieu of live witness

6  testimony is not taxable because it is a service in excess of the costs of making copies of the

7  videotape . . . .").  The Court, therefore, disagrees that awarding video deposition costs is

8  contrary to Section 1920.  The touchstone for recovery of costs for "making copies of any

9  materials" is whether they were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4).

10  Kabo has not explained why the video depositions were unnecessary to JSP's case and so the

11  Court does not see a reason for deducting the costs.

12  Kabo further argues that JSP should not recover costs for both an original deposition

13  transcript and a certified copy pursuant to Local Rule 54-4.  The Rule states that "[t]he cost of a

14  deposition transcript (either the original or a copy, but not both) is taxable. . . ." LR 54-4.  If JSP

15  were seeking costs to specifically obtain both an original and a copy, then there would be cause

16  for a deduction.  However, the invoices that JSP submitted as to deposition services does not

17  indicate that JSP paid separately for a certified copy of the deposition or whether the certified

18  copy was included as a routine measure by the company providing the deposition services. (*See,*

19  *e.g.*, Advanced Depositions Invoice, ECF No. 386-4 (including a single charge to JSP for the

20  original and one certified copy of the deposition)).  The Court, therefore, sees no reason to make

21  a deduction here.

22  Kabo next argues that JSP cannot recover costs for the special interpretation services it

23  used to translate certain depositions and Chinese documents.  The Court agrees only in part.  JSP

24

1 cites 28 U.S.C. § 1828 as the statutory authority for recovering translation costs.  This provision

2 applies to "special interpretation services" that are used "in criminal actions and in civil actions

3 initiated by the United States." 28 U.S.C. § 1828.  The Court does not find this statute applicable

4 to the present case because it is clearly not criminal and the United States is not a party.

5 However, Section 1920(6) does allow for the "compensation of interpreters."  The Supreme

6 Court recently clarified that taxable costs for interpreters are limited to oral translations and that

7 Section 1920(6) "does not include costs for document translation." *Taniguchi*, 132 S. Ct. at 2007.

8 From JSP's Bill of Costs, it appears that interpretation services were required "for [a] Mandarin

9 interpreter for Melody Hsieh, [and] Chih-Ching "James" Hsieh." (Itemization of Bill of Costs 7,

10 ECF No. 386-1).  This cost is recoverable under Section 1920(6).  The remaining costs for the

11 translation of the Chinese documents are not recoverable, however.  Accordingly, JSP's costs for

12 interpretation services must be reduced by $1,641.25.  Finally, Kabo argues that JSP is not

13 entitled to recover costs associated with the court-ordered deposition of Olson.  JSP concedes

14 this point and recognizes its obligation.  JSP consents to a reduction of $4,456.61 of any award to

15 cover the cost of the Olson deposition. (Pl.'s Reply 17, ECF No. 400).  The Court accepts this

16 reduction as satisfying JSP's obligation in this matter.

17 Therefore, the Court finds that JSP's costs should be reduced by $6,497.86.  The Court

18 also finds that JSP is entitled to recover all remaining taxable costs.  Therefore, the Court awards

19 JSP its taxable costs of $31,707.79.

20 ///

21 ///

22 ///

23 ///

24

**CONCLUSION**

IT IS HEREBY ORDERED that JSP's Motion for Attorney's Fees is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that JSP may not recover attorney's fees and expenses, but that it may recover $31,707.79 in costs.

IT IS FURTHER ORDERED that the Motions to Seal (ECF Nos. 381, 391, 402) are GRANTED.

IT IS SO ORDERED.

Dated: December 22, 2014

_____
ROBERT C. JONES
United States District Judge